# Anderson, et al. v. Commonwealth.

(Decided June 10, 1924.)

## Appeal from McCracken Circuit Court.

1. Criminal Law—Defendants Cannot Complain of Evidence Brought Out by Themselves on Cross-Examination.—Defendants cannot complain of testimony elicited on cross-examination of Commonwealth's witness, without objection or motion to exclude, as to other crimes committed by one of defendants.

2. Criminal Law—Testimony of Accomplice Held Sufficiently Corroborated and Peremptory Instructions Held Properly Refused.—Testimony of accomplice held sufficiently corroborated in a prosecution for conspiracy to obtain money by false pretenses, and court properly refused to give peremptory instruction.

3. Criminal Law—Flight, Escape, or Other Incriminating Acts Admissible.—Proof that defendant after commission of crime fled, or concealed himself, or endeavored to avoid arrest, or escaped, or attempted to escape from custody after arrest, or was guilty of any other conduct inconsistent with his innocence, is competent as evidence conducing to establish his guilt.

4. Criminal Law—Confession or Admission Competent and Sufficient to Corroborate Accomplice.—Confession or admission of defendant, tending to prove his guilt, is competent as evidence against him, and also to corroborate an accomplice.

5. Criminal Law—Sufficiency of Corroborating Evidence for Jury.—Where there is corroborating evidence sufficient to permit jury to consider evidence of an accomplice, they are sole judges of credibility of witnesses and weight to be given such testimony.

6. Conspiracy—Evidence Held Insufficient to Sustain Conviction, and to Warrant Directing Verdict.—Evidence held insufficient to sustain a conviction of one defendant for conspiracy to obtain money by false pretenses, and court should have directed acquittal.

7. Criminal Law—Admission of Accused in Presence of Officers Held Incompetent.—Evidence of admission made by accused before county attorney, police judge, and chief of police, while under arrest, was incompetent where obtained under circumstances that in effect amounted to coercion.

8. Criminal Law—Admission of Evidence Held Not Prejudicial.— Admissions obtained by officers from one defendant under circumstances amounting to coercion, though incompetent in evidence, held not prejudicial to another defendant, where he merely identified Commonwealth's witness as one of those giving him a check to have cashed.

L. B. ALEXANDER for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming. as to Anderson and reversing as to Chapman.

The appellants, Ira Anderson and Levi Chapman, and one E. C. Copeland, alias E. M. Woody, were jointly indicted by the grand jury of McCracken county charged with the offense of "conspiring, confederating and banding themselves together for the purpose of committing a felony, by obtaining money by false pretenses, statements and tokens with intent to commit a fraud." As the great length of the indictment forbids its insertion in the opinion, it is enough to say that it in due form charges that the fraud and felony committed by the defendants in pur-

suance of the alleged conspiracy were accomplished by their execution of and obtention of money upon the following false check:

"Paducah, Ky. 12/13-1922 No. —

"First National Bank.   73-34.

Pay to the order of Ira Anderson........................$7.00
Seven _____ Dollars
For cash.                                 E. M. Woody."

To this check E. C. Copeland signed the fictitious name E. M. Woody, and following its endorsement by Ira Anderson, the check was carried by Levi Chapman at the solicitation of one, or both of them, to the store of E. Ham & Son, merchants of the city of Paducah, and after its endorsement by Chapman, cashed by Earl Ham, a member of the firm, who, at the request of Chapman, paid him $7.00 in money upon and for the check; and this money Chapman at once delivered to Anderson and Copeland or to Anderson alone.   When in due course the check was presented for payment by Ham to the bank upon which it was drawn, its payment was refused because neither the drawer, payee nor endorsers of the check had any funds therein with which to pay it.  Ham & Son were never repaid the $7.00, or any part thereof, obtained of them by Chapman on the check.  The transaction thus resulting in the alleged fraudulent procurement of the $7.00, on the worthless check by Copeland, Anderson and Chapman, together with the alleged conspiracy preceding it and alleged fraudulent acts and false representations made by them to obtain the money, constituted the felony charged in the indictment.

The appellants, Anderson and Chapman, were jointly tried in the court below for the offense charged in the indictment, each found guilty and his punishment fixed by verdict of the jury at confinement of one year in the penitentiary; and each of them has appealed from the judgment manifesting his conviction.

It is insisted for the appellants that the judgment should be reversed because of error committed by the trial court: (1) In refusing a peremptory instruction directing a verdict of acquittal.   (2) In admitting incompetent evidence.   (3) In failing to properly instruct the jury. (4) In refusing them a new trial on the ground that the verdict was unsupported by and flagrantly against the evidence.  It is not disclosed by the record before us

what disposition has been made of the indictment as to E. C. Copeland. It does show, however, that he was introduced and testified as a witness for the Commonwealth; and, although in advance advised by the court that he need not testify if unwilling to do so and that he could not be required to make any statement that would incriminate himself, he voluntarily and fully confessed his participation in the commission of the offense charged in the indictment. His testimony was substantially to the effect: That the night before the check in question was written, he and the appellant Anderson, whom he had known several years, were together in an intoxicated condition and at a late hour went to the home of Anderson, where he, upon the latter's invitation, spent the remainder of the night. On the following morning they were in bad condition from the dissipation of the previous night and without whiskey or money. In their deliberations over this situation Anderson said: "We have got to have some whiskey," and immediately produced a check book containing blank checks intended to be drawn on the First National Bank of Paducah, which he laid on a table, and from which Copeland, by his direction, obtained, filled out and signed with the fictitious name, E. M. Woody, the check of $7.00, copied in the opinion. This check Anderson took in his possession and carried from the house with the statement that he would get a negro to obtain the money on it, with which he (Anderson) would buy some whiskey for his and Copeland's use. Copeland remained at Anderson's home in conversation with the latter's father until Anderson returned with the whiskey he claimed had been purchased with the $7.00 obtained on the check. Copeland also testified that he did not see the check given to Chapman by Anderson, did not himself give it to him and did not then know Chapman; and further that when he wrote and signed the check he was in a dazed state of mind from the previous night's debauch and then expressed to Anderson his unwillingness to fill out the check or sign it with the name E. M. Woody, and told him that he had no money in the bank; but that Anderson insisted that he make out the check and sign the name E. M. Woody to it as directed, and assured him that it would be all right, to which he (Copeland) finally yielded.

Earl Ham, of the firm of Ham & Son, by whom the $7.00 check was cashed, testified that he cashed it at the request of Chapman, who brought it to his store and at

the time stated that Anderson had given him the check to get cashed. Ham informed Chapman that he knew Anderson, the payee in the check and whose name appeared on the back thereof, but did not know E. M. Woody, whose name appeared at the bottom of the check, in reply to which Chapman, without saying that he knew Woody, assured Ham that the check was all right and, if not all right, he would make it so; and thereupon wrote his name on the back of it below that of Anderson, after which Ham accepted the check and let Chapman have $7.00, the amount for which it was drawn. Ham further testified that he knew the handwriting of Anderson, but that after cashing the check he did not see Anderson until the latter's trial under the indictment, though after the bank's rejection of the check, he made one or more visits to his residence to see if he could not get him to make good the loss he (Ham) sustained by reason of the fraudulent character of the check and the bank's refusal to pay it.

The appellant, Anderson, in testifying in his own behalf, specifically denied that he, as testified by Copeland, suggested to the latter or directed that he execute the check in question; that he furnished him for that purpose a book of checks for use at the bank upon which the check was drawn, or that he directed Copeland to sign the fictitious name, "E. M. Moody," to the check, or told him to remain at his (Anderson's) residence while he went out to see a negro who would get the check cashed and buy them some whiskey. Anderson also denied that he gave the check to Chapman, got him to have it cashed, or that he received the money obtained on the check by Chapman. As to these transactions his testimony was that the check was written by Copeland, with the name "E. M. Woody" as drawer, and endorsed by him (Anderson) at the shop of a negro undertaker near his residence and was there given Chapman by Copeland, with the request that he obtain for him the money on it, and that shortly thereafter Chapman returned with the $7.00, obtained on the check, which he paid to Copeland.

We do not find in the testimony of the appellant Anderson any denial of that of Copeland as to the latter's spending the previous night at his home, or of Copeland's testimony in regard to the drinking bout in which they indulged before their arrival there. Anderson's testimony does, however, contain admissions that he had known Copeland two or three years; that they had

worked together; that he saw Copeland fill out the check and sign the fictitious name, E. M. Woody, thereto, and that immediately thereafter, without questioning this act of Copeland, he endorsed the check with his own signature, but stated that he endorsed the check because Levi Chapman, when asked by Copeland to get the check cashed, said he did not know Copeland but did know Anderson and that if he would sign the check he (Chapman) would get it cashed, whereupon he (Anderson) signed his name on the back of it; and it was then delivered to Chapman with direction to get it cashed. He also admitted that he knew no person bearing the name "E. M. Woody," and it was abundantly shown by the testimony of other witnesses that there was no one of that name in the city of Paducah, or elsewhere, known to them.

The testimony of appellant, Chapman, corroborated in large measure that of Anderson as to the circumstances attending the delivery to him (Chapman) of the check, but contradicted the statement of the latter that he (Chapman) was called by Copeland to where he and Anderson were standing at the shop of the negro undertaker, by testifying that it was at Anderson's call that he went to them. He, however, further testified that he did not then know Copeland, or any person bearing the name, E. M. Woody, and for that reason informed Copeland and Anderson, when they requested him to get the check cashed, that he would attempt to do so if Anderson, with whom he was well acquainted and to whom it was made payable, would endorse the check. That Anderson thereupon endorsed the check and it was then taken by Chapman to the store of Ham & Son, there cashed and the money received on it immediately delivered by Chapman to Copeland, who paid him nothing for the service he thus performed.

Copeland, upon being introduced in rebuttal, denied that he was present when the check was delivered to Chapman, that it was endorsed by Anderson at the place of its delivery to Chapman, or that the latter gave to him (Copeland) the money, or any part thereof, obtained on the check. These denials were followed by a reiteration of many of the statements contained in his testimony in chief that the check was written and signed with the name E. M. Woody by him at Anderson's residence, there endorsed by the latter and thereafter delivered by him alone to Chapman away from his residence where Copeland remained until his return.

In addition to the evidence thus far considered, the record contains the testimony of five or six witnesses concerning the general reputation of the appellant Anderson and that of E. C. Copeland; that affecting the reputation of Copeland having been brought out on the cross-examination of the witnesses by counsel for the appellant. All of these witnesses testified that they knew the reputation of Anderson and Copeland and that of each was bad, that of Copeland for morality being bad, because it is that of a common or habitual drunkard, and that of the appellant Anderson being bad for veracity, indeed, so bad with respect to veracity that several of the witnesses expressed the opinion that he was not entitled to credit on oath. It was also shown by the Commonwealth's evidence that Anderson's flight from Paducah after his indictment caused the forfeiture of his bond, and that after more than a month's absence he was re-arrested in Louisville. No attack was made by the Commonwealth upon the reputation of the appellant Chapman.

On the cross-examination of England, chief of police of the city of Paducah, one of the impeaching witnesses introduced by the Commonwealth, counsel for the appellants elicited from him the statement that he had heard of the appellant Anderson passing other cold checks besides the one in question. This statement, had it been brought out on the direct examination of the witness, would not have been competent as evidence in behalf of the Commonwealth; but resulting, as it did, from the interrogation of the witness on his cross-examination by the appellants' counsel without objection from them, or motion to exclude it, they are estopped to complain of such prejudicial effect, if any, as its admission may have had upon their substantial rights. No evidence was introduced by the appellant Anderson to repel the attack made on his reputation by the witnesses for the Commonwealth; nor was there any attempt on the part of the Commonwealth to refute the evidence attacking the reputation of Copeland.

The vital question presented for decision on the appeal is that raised by the first contention of the appellants, viz., whether the refusal by the trial court of the peremptory instruction asked by them at the conclusion of the Commonwealth's evidence and, again, after the introduction of all the evidence, should, by this court, be declared reversible error. It is insisted for the appellants that they were entitled to a directed verdict of ac-

quittal under section 241, Criminal Code, on the ground that the only evidence that tended to establish the guilt of the appellants was that furnished by the testimony of Copeland, a confessed accomplice in the commission of the offense charged, which, it is argued, was uncorroborated by other evidence tending to connect them with the commission thereof.

The record fails to sustain this contention in so far as it affects the appellant Anderson, with respect to whom there was evidence, other than that furnished by the testimony of Copeland and Chapman, which tended to prove that he knowingly and willingly participated, or assisted, in the fraudulent acts and false pretenses attending the writing and uttering of the false check by which Ham & Son were defrauded of the $7.00 they paid Chapman thereon. The additional evidence referred to consists of the various facts and circumstances disclosed by the conduct and admissions of Anderson which corroborate Copeland and in several essential particulars are corroborated by the testimony of Copeland.

It will be recalled from what has been said of the testimony of Anderson that he admitted an acquaintanceship of two or three years' standing with Copeland and, by his failure to deny the statements of the latter as to those facts, in effect admitted that after a round of dissipation in which he and Copeland together indulged in the earlier hours of the evening, the latter, upon his invitation, spent the remainder of the night preceding the execution of the check, at his (Anderson's) home. He also admitted that there was no person bearing the name "E. M. Woody," appearing at the bottom of the check, known to him, and, further, that he saw Copeland fill out the check, write therein his (Anderson's) name as payee and at the bottom of the check the name E. M. Woody as the drawer thereof. He did deny that he, as testified by Copeland, suggested to him the use of the name "E. M. Woody" as drawer of the check, but did not testify that Copeland claimed to have authority from any person of that name to sign it to the check as drawer thereof or otherwise, or that he (Anderson) inquired of Copeland who Woody was, or whether he had authority from any one of that name to sign it to the check.

So in view of Anderson's admitted endorsement of the check after it was filled out and the name "E. M. Woody" signed to it by Copeland in his presence, whether it was written and endorsed at the residence of

Anderson, as testified by Copeland, or at the shop of the negro undertaker as testified by Anderson, it is evident that its endorsement by the latter was made with the knowledge that the check was signed with a fictitious name for a fraudulent purpose, and that with such knowledge he procured, or aided Copeland in procuring, the assistance of Chapman to obtain of Ham & Son the money thereon.

It is also disclosed by the record that Anderson failed to introduce, or have summoned as a witness in his behalf, his father, who is a resident of Paducah and the only person by whom he might positively have contradicted, had it been untrue, the testimony of Copeland that he remained at Anderson's home with the latter's father while he (Anderson) went out with the check and obtained through Chapman from Ham & Son the money on it.

In addition to the foregoing facts and circumstances throwing light upon the appellant Anderson's connection with the transaction in question, there is to be considered the evidence showing his flight from the city and county of his residence after his indictment, which resulted in the forfeiture of his bail bond and subsequent re-arrest in the city of Louisville some months later; and proof that a defendant, after his commission of a crime, fled or concealed himself as though to elude justice, or that he endeavored to avoid arrest, or escaped or attempted to escape from custody after arrest, or was guilty of any other conduct inconsistent with his innocence, is competent evidence conducing to establish his guilt. Basham v. Commonwealth, 87 Ky. 440; Saulisbury v. Commonwealth, 79 Ky. 425; Inman v. State, 72 Ga. 269; Commonwealth v. McHugh, 147 Mass. 401. The confession or admission of a defendant tending to prove his guilt is competent as evidence against him, and also sufficient to corroborate an accomplice. Blackburn v. Commonwealth, 12 Bush 181; Smith v. Commonwealth, 13 Ky. L. R. 369. Therefore, an accomplice may be as effectually corroborated by the conduct or admissions of the accused, or by circumstances tending to establish his guilt, as by direct testimony of witnesses having knowledge of the facts attending the commission of the crime. And as it cannot be said that the evidence of the conduct and admissions of the appellant referred to, together with that of the circumstances that tended to connect him with its commission, was not sufficient to corroborate that of Copeland, the accomplice,

conducing to establish his guilt, it necessarily follows that the action of the trial court in refusing the directed verdict of acquittal asked by the appellant Anderson was not error. For when, as in this case, there is corroborating evidence sufficient to permit the jury to consider the evidence of an accomplice, they are the sole judges as to the credibility of the witnesses and the weight to be given their testimony; and are alone authorized to determine whether the additional evidence introduced does or does not conduce to prove the guilt or corroborate. Craft v. Commonwealth, 81 Ky. 250; Patterson v. Commonwealth, 86 Ky. 313; Commonwealth v. McGarvey, 158 Ky. 570; Elliott v. Commonwealth, 154 Ky. 696.

In this connection it should be added that the fourth contention of the appellants cannot be sustained as to the appellant Anderson, for as to him the verdict is not, as claimed, flagrantly against the evidence. On the contrary, the testimony of the accomplice Copeland and that of Chapman, together with the corroborating evidence furnished by the conduct and admissions of Anderson, and the circumstances connecting him with the commission of the crime charged, were, in our opinion, sufficient to support the verdict.

We are, however, constrained to hold that both the first and fourth contentions should be sustained as to the appellant Chapman. While he obtained from Ham & Son the $7.00 for which the check was drawn, in doing so he merely acted as the agent of Copeland and Anderson, or rather as the agent of the latter. He testified that he was wholly unacquainted with Copeland prior to the time he received the check, and Copeland testified that he did not know Chapman at the time he was given the check, was not present when he received it and never met or saw him until several days thereafter. It conclusively appears from the testimony of Anderson and Chapman that they were acquainted when and before the latter received the check and that Chapman refused, because of not knowing Copeland, to take the check without Anderson's endorsement of it. There does not appear to have been anything in Chapman's connection with the transaction that indicated bad faith on his part, or that he knew the name appearing on the check as the drawer thereof was a fictitious name. Being unacquainted with the drawer of the check, he relied on the endorsement of Anderson, who was well known to him. He did, according to the testimony of young Ham, assure him that

the check was all right and gave it his endorsement by writing his name on it as endorser, but did not represent to him that he knew the drawer of the check. In brief it is fairly apparent from the evidence as a whole that Chapman was a mere tool of Anderson and Copeland, but it fails to show that he was aware of the fraud intended and perpetrated by them through the use of the false check. It is our conclusion, therefore, that the motion of the appellant Chapman for a directed verdict of acquittal should have been sustained by the trial court.

The complaint made of the admission of alleged incompetent evidence is without merit. The evidence in question was furnished by the testimony of the county attorney, police judge and chief of police as to admissions made by the appellant Chapman in their presence and while under arrest, regarding the delivery to him of the check and his identification of Copeland as the drawer of the check when the latter was brought into his presence. We think the evidence was incompetent because obtained under circumstances that in effect amounted to coercion, but we do not think its introduction prejudiced the appellant Anderson in any substantial right, as the statement made by Chapman contained a mere denial of his being acquainted with Copeland until after the money was obtained on the check. But when the latter was brought in his presence he did identify him as the man who in company with Anderson gave him the check. There was in the interview no explanation of the manner in which the check was executed or by whom. The only thing accomplished by the questions put to Chapman was his identification of Copeland as the man who had participated in the execution and delivery to him of the check but whose real name of Copeland did not become known to him until after the commission of the crime involved in the obtention of the money on the check.

We discover no error in the instructions given by the court. They included an instruction as to the necessity of evidence to corroborate that of an accomplice as required by section 241, Criminal Code. As a whole the instructions fully and fairly gave the jury the entire law applicable to the case. For the reasons indicated the judgment is affirmed as to the appellant Anderson and reversed as to the appellant Chapman, and as to the latter remanded to the circuit court for a new trial consistent with the opinion.