## Clift v. Commonwealth.

(Decided May 7, 1937.)

574

R. L. POPE, TOM J. DAVIS, J. E. WALDEN and G. C. CLAY for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Arnold Clift, Perry Marion and Roy Hale were in-

dicted for the murder of Mrs. Reed Taylor. The indictment charges appellant with the homicide and the others as being accessories. The counts are so drawn as to charge one or the other of the two companions as having committed the murder, appellant being accessory thereto.

Motions for separate trials were sustained. Perry Marion was first tried and found guilty. On the call of the indictment against appellant both parties announced ready. Defendant waived arraignment and entered a plea of not guilty. The attorney for the prosecution read the indictment and completed his statement. The record recites "at this point this defendant in person, withdrew his plea of not guilty, and entered a plea of guilty to the charge contained in the indictment."

The case proceeded to trial, the defendant was found guilty, and his punishment fixed at death. Motion for a new trial was overruled, judgment entered according to the verdict, and from that judgment appeal is prosecuted.

In his motion for a new trial the accused contended that: (1) The court erroneously admitted incompetent, and rejected competent evidence over his objections. (2) The verdict of the jury is against both the law and the evidence. (3) The court erroneously instructed the jury. (4) The defendant entered a plea of guilty on the promise of the commonwealth's attorney that he would recommend to the jury that he be sentenced to life imprisonment, and failed to make such recommendation.

At the time of the homicide Reed Taylor was operating a country store in Laurel county, about eight miles from Corbin. His residence was nearby. His family consisted of himself, his wife, and a son about thirteen years of age. On the night of the homicide, June 2, 1936, the boy slept "in the front room next to the road." The mother and father slept in a rear room. The boy awoke on Sunday morning about 6 o'clock and went into the room of his parents. Not finding them there he went to the kitchen, and failing to find the customary preparations for breakfast proceeded to the store. Going into the side door of the store he found his father, dead. He then went out the door, and at a short distance therefrom found his mother's dead body, it having been badly mutilated by hogs. He then went to

some neighbors for aid. The boy said that during Saturday afternoon Roy Hale one of the accused had come into the store and made a purchase from his father.

An officer, who examined Mrs. Taylor's body at an undertaking establishment, testified that she had been shot twice, once in the left side the bullet going through her body, another going through the left shoulder.

Perry Marion, who had theretofore been tried, testified for the commonwealth. He relates that some time previous to the night of the homicide, appellant was introduced to him under the name of Jerry Smith; they became well acquainted on short notice, and appellant made a suggestion to rob Ross Bryant's liquor store in Corbin, but this was abandoned. Later they discussed a plan to rob Taylor's store, it being agreed that Hale, who lived in the neighborhood and knew the situation, would take appellant out to "look it over." They made the trip, appellant afterwards saying to Marion: "It will be easy." After dark they started to Reed's store. Marion had a 45 automatic and appellant a 38 "squeezer." Arriving at the store they called Mr. Taylor from his home, saying they wanted gas. Taylor drew the gas for them, and they asked for something to eat. Taylor went into the store by a side door, the two accused going to the front, believing that Taylor would let them in. Taylor did not, and they went into the side door; as they went in witness said to appellant, "Be sure there ain't no shots fired," and he said, "There won't be any, you pay the man and I will get the money." Appellant asked for a loaf of bread and some cheese. While Taylor was weighing the cheese, appellant closed the door and blew out one of the lamps which Taylor had lighted. At this point appellant stuck his gun in Taylor's back and ordered him to lift his hands. Taylor obeyed, saying he had no money but would go to the house and get it. The accused objected to any such plan.

Just at this stage of the robbery, the side door opened and Mrs. Taylor appeared with a light in one hand and a pistol in the other. Taylor called, "Kill them," and immediately appellant fired toward Mrs. Taylor. Witness thought appellant had already shot Taylor through the shoulder. He says there were four or five shots fired.

The foregoing, in the main, was the testimony for

the commonwealth, except it was shown that on the trial of Perry Marion, appellant had said that he had gone to the store with Hale on the Saturday afternoon to look the situation over, in conformity with the plans above detailed. It was also shown that he was present the night of the homicide, but denied firing a shot.

Appellant testified in his own behalf that he and his family lived at Sody, Tenn. He says he came to Corbin and went to the "Wheel," a restaurant and rooming house operated by Hale and Marion. The next morning Marion approached him with a suggestion of an "easy job." A store in the country was proposed, Marion saying: "There is an old man runs it and nobody lives close by but his wife." Marion suggested that the two could do the job better than one. "I will stick him up and while I have the gun on him you can get the money." The matter was discussed with Hale, and he approved, as has been shown. Appellant agrees on the whole with what had taken place up to the time Taylor went into the store to serve them. The story is conflicting from this period.

Appellant says that when they got to Taylor's store they called him out and asked the way to Pineville. He directed them. They then procured gas and asked for some cheese sandwiches. Taylor told them he had some bread and cheese. They went into the store and Taylor lighted a lamp, got a loaf of bread, cut some cheese, and was weighing it, when, as appellant says, "Marion throwed his 38 in his back." Taylor dropped the lamp, threw up his hands, and says, "I ain't got it." Perry says, "Get around there and get the money." Continuing, appellant said: "I made a circle and there was a big dark place and I didn't get out of this dark place into the lamp light. I looked and seen this woman had opened the side door and she had a pistol in her hand, and her foot or something made a noise and he fired the pistol. He either shot her out of the door or she jumped out." Marion then said, "Let's get going," and fired a second shot. He says before they left Marion got a 38 gun from Taylor.

They drove back to Corbin, went to the Wheel, and Marion and Hale took the cartridges from the pistol which had been taken from Taylor. That night, at Marion's suggestion, appellant went out to the home of

Marion's father. The next day Marion and Carrie Smith brought out a suitcase, supposedly appellant's. Appellant and Marion were about to leave, when Marion was arrested. Appellant and the woman went on to Pineville, where they became separated and appellant was arrested and taken back to London.

That which immediately follows bears on the main contention of appellant for a reversal. He says that after he was taken to the jail at London, the commonwealth attorney asked him: " 'How come you and Perry Marion to kill the old man and woman?' and. I said, 'me and Perry didn't kill any old woman and man.' " The commonwealth attorney insisted that they had. Appellant then said: "I will tell you the truth, and he called his wife in the house to take down the statement and I told him right there just exactly how it happened." Later appellant said: "He had Perry Marion in the office and brought me in and said, 'Who killed the old man and woman?' and I said, 'Perry Marion did,' and Perry Marion was right there when I told it." This is noted because of appellant's insistence in one of his grounds for a new trial, i. e., the failure of the commonwealth attorney to keep his alleged promise of immunity.

Appellant admitted that if the project had succeeded the money obtained was to be divided three ways; Hale was to get one-third for laying out the scene, and appellant and Marion were to divide the remaining two-thirds "for getting the money."

Appellant procured some evidence on the part of friends from Tennessee, who appeared and testified as to his general reputation in his home neighborhood. These persons failed to qualify to such an extent as would lend much favorable weight to their testimony on this point. We have considered it, however, and on the whole it indicates a fair reputation, but at the same time its introduction does not lend much strength to his claim of promise of immunity in case he should enter a plea of guilty.

Roy Hale was called in rebuttal and stated that when Marion and appellant came back to the Wheel after the homicide, appellant had two 38-caliber pistols, one with a white handle and the other with a black one, the latter of which "they said was Taylor's pistol." One of the guns had been fired three times. One of the pis-

tols had been gotten from under the counter at the Wheel before they left to go to Taylor's. This witness also said that when appellant came back from the store and told him what had happened, he said, "Surely you fellows didn't kill that old fellow." Appellant answered, "I shot him in the shoulder," and that when the old woman came to the door he shot the pistol out of her hand.

Complaint is made for the first time in brief because this testimony was admitted, but as we note that at the time it was offered there was no objection. Had there been we would be compelled to hold that the greater part, if not all, was properly admitted on rebuttal. At this point we may say that we have given the transcript of evidence the most careful scrutiny, and fail to find wherein the court either admitted incompetent testimony, or rejected competent testimony tendered on his behalf. In fact, an inspection of the record shows few, and no material, objections to the ruling of the court in either respect. Counsel contends in brief that it was highly improper to allow Marion, an admitted accomplice to testify at all, since appellant had entered a plea of guilty. This was argued on the ground that it is error to introduce proof against an accused when he has entered a guilty plea. A brief discussion of this contention will also dispose of the contention that the court failed to instruct the jury on the law of the case.

The record shows that at the close of the testimony the court instructed the jury:

"The defendant, Arnold Clift, by counsel and in person, having entered a plea of guilty, in open court and in the presence of the judge of the court, the jury, and of counsel for the defendant and commonwealth, you are now therefore instructed to find the defendant, Arnold Clift, guilty of wilful murder, as charged in the indictment, and fix his punishment at death or by confinement in the penitentiary of this State for life, in your discretion."

Taking up first the contention that it was error to introduce any proof in behalf of the commonwealth after the plea of guilty, we cannot agree that the introduction of proof here was prejudicial. Counsel relies on Mounts v. Com., 89 Ky. 274, 275, 12 S. W. 311, 11 Ky Law Rep. 474; Cornelison v. Com., 84 Ky. 583, 2 S. W. 235, 8 Ky.

Law Rep. 793; Williams v. Com., 80 S. W. 173, 25 Ky. Law Rep. 2041. We have read the cited cases, and others, and do not find that the court has ever reversed a judgment on the sole ground that the commonwealth introduced proof after a plea of guilty. There are instances shown where the particular court in which the case was being tried had a rule to the effect that the court would not allow presentation of proof after a guilty plea. Williams v. Com., supra, citing the case of Mounts v. Com., supra. In the Mounts Case the court held that the commonwealth had a right to introduce proof on such plea.

Counsel's chief argument is, however, not on the rule of law as indicated in the cases cited, but that it was error to introduce proof after a confession of guilt, made on the promise that the commonwealth attorney had agreed to make a recommendation for life imprisonment in appellant's case. The great difficulty with this contention is that when Marion was offered as a witness there was no objection to his testifying, nor to any one question asked him. He was cross-examined at length. It was not made known to the court by word or sign that there had been any agreement on the part of the commonwealth attorney. There was no offer or attempt to withdraw the plea of guilty and enter one to the contrary, as is allowed under section 174 of the Criminal Code of Practice, even up to the entry of the judgment.

So it is evident in this respect that there was no error committed to the prejudice of the accused, since he remained silent; made no objection to the testimony of Marion (or Hale); nor did he make any claim to the court that he had been promised the immunity he now claims, or claimed for the first time in his motion for a new trial, and again long after judgment had been entered. It is further insisted the court should have instructed the jury that they could not convict upon the testimony of an admitted accomplice. It is true that section 241 of the Criminal Code of Practice provides:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offence; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

We have held a failure to give the substance of the foregoing instruction to the jury to be error, only under the circumstances existing as provided in the section supra. Mullins v. Com., 216 Ky. 149, 287 S. W. 542; Hendrickson v. Com., 235 Ky. 5, 29 S. W. (2d) 646.

It is not always error to fail to give the substance of the Code provision to the jury by way of instruction. Campbell v. Com., 234 Ky. 552, 28 S. W. (2d) 790. In this case there was other proof which not only tended to connect the defendant with the commission of the offense, but actually showed his participation. It was proven in chief that appellant had testified in the Marion case, voluntarily and freely, showing his presence at the time of the homicide, aiding and abetting, but there, as here, denying that he fired a shot.

In addition to proof connecting appellant with the crime, we have pointed out that appellant said before the court and jury, that he was guilty of the offense charged in the indictment. It would have been futile to have the court instruct in conformity with section 241 of the Criminal Code of Practice. Wynn v. Com., 198 Ky. 642, 249 S. W. 784. Proof of a confession by the accused is a sufficient corroboration of the evidence of an accomplice. Patterson v. Com., 99 Ky. 610, 5 S. W. 765, 9 Ky. Law Rep. 481; Miller v. Com., 240 Ky. 346, 42 S. W. (2d) 518, 519. A plea of guilty confesses everything charged in the indictment. Johnson v. Com., 254 Ky. 775, 72 S. W. (2d) 472.

The contention that the verdict is flagrantly against the evidence needs but brief notice. There was ample proof in addition to the confession, to take the case to the jury, and it was properly submitted under the instruction given by the court. It may have been the belief of appellant that he was not guilty of homicide, because as he contends, he did not fire the shot which took Mrs. Taylor's life. Appellant was indicted both as principal and accessory. Under our statutes and decisions by this court, even though it be that appellant did not fire the shot, his admission of presence and assistance sufficiently constitutes equal guilt with Marion, who according to appellant, fired the shots. Section 1128, Ky. Stats.; Philpot v. Com., 240 Ky. 289, 42 S. W. (2d) 317; Tincher v. Com., 253 Ky. 623, 69 S. W. (2d) 750.

We come now to the final contention of appellant, and we are impressed with the earnest and sincere argu-

ment presented by counsel on this point; but a review of matters appearing in the record, together with the proof, clearly demonstrates that no error prejudicial in the respect claimed, was committed by the court below. We have shown above to some extent what occurred with regard to the pleas entered by appellant. But, due to the importance of the question and the fact that appellant had measured to him the severest penalty of the law, we may indulge some repetition.

After arraignment the appellant was called upon to plead, and he answered not guilty. After the opening statement of the commonwealth attorney, in which from the record we are justified in saying, it was made known to appellant that the jury would be asked to return the heaviest penalty, the appellant, in his own person (Cr. Code Prac., sec. 173), changed the plea and confessed guilt. What induced this change on his part is not demonstrated by the record. If there had been such an agreement as is insisted on by appellant, he first broke faith with the commonwealth by entering his plea of not guilty. But we shall not undertake to decide appellant's rights on account of a breach of faith on his part.

It clearly appears that after this statement by the commonwealth attorney, followed at once by a change of plea, the court was in no way apprised of the existence, or of a hint of any such agreement. The case proceeded in a very orderly manner, without objection by appellant or his counsel. Under the section of the Code supra, the appellant had time up to the rendition of the judgment to change his plea of guilty to not guilty, Johnson v. Com., 254 Ky. 775, 72 S. W. (2d) 472, even after verdict under certain conditions, for example, such as appeared in Little v. Com., 142 Ky. 92, 133 S. W. 1149, 34 L. R. A. (N. S.) 257, Ann. Cas. 1912D, 241; Kidd v. Com., 255 Ky. 498, 74 S. W. (2d) 944, but the right does not extend beyond the judgment, unless it be clearly shown that the accused had been coerced into making the plea, or he had been put in fear, or if by fraud he had been deceived and then action becomes a matter in the discretion of the court.

Motion for a new trial was made on June 19, 1936. On June 24, the court overruled the motion and entered judgment. On the motion for a new trial the ground in question was simply stated. It will be noted that appel-

lant on this ground says nothing of his agreement to testify and tell the truth about the homicide, but merely mentioned a promise or agreement that the attorney would recommend a life sentence. On June 29, five days after judgment had been entered, appellant tendered his own, and the affidavit of his attorney who, as the record shows was present representing appellant all through the trial. The court declined to direct the filing of the affidavits, but ordered their indorsement as tendered. The court's conclusion in this respect was based on facts, and we are not prepared to say that his conclusion was erroneous.

The affidavit of appellant, among other matters not necessary to recite, stated that "in order and in consideration of inducing this affiant to tell the truth about the said murder * * * and to inform the commonwealth attorney just the connection of Roy Hale and Perry Marion, * * * it was promised and agreed on behalf of the Commonwealth of Kentucky, in the event that he would disclose the facts surrounding the said murder * * * telling what connection he had with it, and disclosing the connection and actions of the other two defendants in said murder * * * the said Commonwealth of Kentucky would permit this affiant and defendant to plead guilty, and he would receive a life sentence in the penitentiary, and that the said Little as commonwealth attorney would then and there recommend to the said jury giving this affiant a life sentence."

Appellant then continues, stating substantially that in reliance of said representations he did plead guilty to the charge, and did tell in open court on the trial of Perry Marion, the details of the murder, showing his, Marion's, and Hale's "connections and activities therewith, and that the commonwealth attorney, in violation of his agreement, did not recommend to the jury that appellant be given life sentence, but to the contrary insisted on a death sentence." That upon his testimony the commonwealth procured the conviction of Marion. He further says that but for said agreement he would not have entered a plea of guilty, and that the agreement on his part was made in the best of faith, by the affiant and his two attorneys. The attorney, in affidavit, stated that he was a resident of Tennessee; that when appellant became involved, his parents, with others raised $50 which they paid to him to go to Lon-

don and make an investigation in behalf of appellant; that he went to London, and to the courthouse where he met the commonwealth attorney; that affiant got the consent of the jailer to talk to appellant, and after a brief conversation, an attorney who had been appointed by the court, appeared. Soon thereafter the commonwealth attorney appeared and told affiant that Arnold Clift had told him what he deemed to be the whole truth in the matter; that if appellant would "continue to stick to the truth and plead guilty he would recommend a life sentence." This attorney says he advised Clift to "do anything that was requested by the commonwealth attorney." That after he had received a letter from the London attorney he had no doubt that the commonwealth attorney would live up to his agreement. A copy of the letter from the London attorney to the Tennessee attorney was filed. It was dated June 9, 1936, and stated in part that the commonwealth attorney had agreed that he would recommend a life sentence for appellant if he would plead guilty. The writer of this letter did not make affidavit.

The commonwealth attorney filed his affidavit, and denied that he had at any time "induced the defendant * * * by promise of recommendation to the jury, to give him a life sentence for the purpose of having him tell the truth about the murder of Mrs. Taylor." He denied unequivocally any agreement or understanding with appellant whereby he would recommend that appellant would receive a life sentence.

In his order denying the filing of the affidavits, the court called attention to the fact that on the Marion trial the defendant had testified voluntarily, without any offer of reward or immunity and without threat. The order recites:

"The court, of course, has not personal knowledge of any arrangement or anything said or done between the parties, but in view of the testimony of the defendant, and the affidavit of Mr. Little, the court does not put any credence to his now statements. The contention of the defendant that the commonwealth attorney agreed to recommend a life sentence is a matter of which the court has no knowledge, except that disclosed by the record. However, the defendant upon the trial of the case heard the opening statement, and it was then made

known that the death penalty would be asked, and also during the progress of the trial it was evident that the defendant and his counsel knew that the commonwealth attorney would ask the death penalty, and he testified to nothing of that kind upon the trial, so far as the judge of this court remembers."

The court also calls attention to the fact that appellant had the right to withdraw his plea of guilty at any time he desired before judgment.

We can add little to what was said by the court in refusing to consider the proffered affidavits after judgment had been entered. A careful check of the record in this case, with an inspection of the record in the Marion case, which was considered by this court in reviewing the instant case, shows us that the court was correct in each assertion contained in his order.

On the whole case it appears strange to this court if the facts, as set out in the affidavits above, existed as claimed, that such facts should have been so carefully concealed from the court, which alone had the power to give due consideration thereto, and relieve a claimed situation which was of such vital importance to appellant, if the facts were true. It is inconceivable that appellant should have gone through two trials, one of Marion, the other his own, testifying as he said freely and voluntarily, without at some time permitting the court to know of an alleged promise of immunity. The fact that this did occur, taken together with other circumstances which need not be emphasized, does not stamp the claim of appellant with such color of verity as would justify us in holding that the court abused a discretion vested in him, in not reopening the case after judgment had been rendered.

The penalty inflicted was a severe one, but on the other hand the crime was inexcusable. The appellant with remarkable readiness agreed to take part in the robbery and just as readily surveyed the scene of action in advance and then actively participated. He brought his situation on himself and has pointed out no good or sufficient reason why we should extricate him therefrom, and finding no such reason we must affirm the judgment below.

Judgment affirmed.

The whole court sitting.