## Fryman v. Commonwealth.

Feb. 17, 1942.

Raymond Connell for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The grand jury of Bourbon county, Kentucky, returned an indictment against the appellant (defendant below), Silas Hinkson, Jr., Frank Waugh, and Robert Fryman, charging them jointly with the crime of grand larceny. It was charged that they did take, steal, and carry away certain antiques of a value more than $20, the personal property of Mrs. Ed Simms. Upon a separate trial the defendant, Melvin Fryman, was convicted and his punishment fixed at three years in the penitentiary.

Four alleged errors are assigned and insisted on for reversal of the judgment, namely, (a) the verdict of the jury was flagrantly and palpably contrary to the law and the evidence; (b) the trial court erred in refusing to peremptorily instruct the jury to find defendant not guilty; (c) the trial court erred in refusing to permit the defendant to introduce competent evidence in his be-

half upon the trial; and (d) the trial court failed to instruct the jury on the whole law of the case. We will discuss the points in the order named.

The stolen property in question was taken from a house on the farm of Mrs. Ed Simms in Bourbon county in May, 1941, and soon thereafter the stolen articles, or part of them, were found in the possession of antique dealers in the city of Lexington who purchased the stolen property from the defendant and others. The purchasers of the property testified that they purchased it of defendant, whom they identified, in company with two other boys, whom they failed to identify. Defendant admitted that he sold the property and offered as his sole defense that it was the same property which he, Frank Waugh and Silas Hinkson bought from Miller Patterson in Lexington and resold part of it to Mrs. Burke in Lexington, and a part to Mrs. Beasley who lived on the Lexington Road. In brief of counsel for defendant it is recognized that possession of stolen property is prima facie evidence of guilt of the theft of it, and the burden then shifts to the accused to satisfactorily explain such possession. It is insisted that defendant fully sustained this burden and the court should have directed a verdict in his favor.

Woodrow Lairson, who at that time lived in Lexington but had previously lived in Bourbon county on the farm of Mrs. Simms, testified that during the month of May, 1941, Melvin Fryman (defendant), Frank Waugh and Silas Hinkson came to his place of business in Lexington in a black Ford coupe and defendant asked him if he knew where he could sell some antique furniture. Upon being asked what else defendant said to him, he answered: "Well, he says, 'Do you know where we can get rid of some hot stuff?' " The witness was further asked and answered these questions:

"Q. What did you say? A. I told him no. I said, 'What kind of hot stuff?'

"Q. What did he answer? A. He said some antique furniture.

"Q. Did you give him directions about where he could go? A. No, sir; I said, 'the only place I know where you could sell it,' I said, 'is to some of these antique dealers.'

"Q. Did he make any statement of where he got this stuff? A. I was in the back of the shop and walked out to the front of the shop and asked him where he got the stuff and he said it come from the Simms' farm."

The witness said that the above matters testified to occurred on Saturday, but he did not remember the exact date, but indicated it was about the 17th or approximately the middle of May. On cross-examination of the witness it developed that a warrant had been issued against him for selling the property, but the warrant was dismissed in the county court and his bond discharged.

The Commonwealth also introduced Silas Hinkson, who was also charged in the indictment with the theft of the property. He testified that on or about May 17, 1941, he, defendant, and Frank Waugh went to the antique shop of Mrs. Burke for the purpose of selling some antiques. He said he was in Paris, and defendant and Frank Waugh came along and asked him if he wanted to take a drive and he got in the car with them and went to Lexington; that it was a Ford coupe and belonged to Robert Fryman and was driven by defendant; that they drove to Lexington and went to Mrs. Beasley's place and defendant tried to sell the property to Mrs. Beasley but he made no sale, and came back and got in the car and went to Mrs. Burke's place and took some of the property in and Mrs. Burke came out and looked at the rest of it and defendant carried the property in and sold it to Mrs. Burke; that on the following day he made another trip from Paris to Lexington with defendant in a truck, and again went to Mrs. Burke's place and defendant sold some more of the stolen property, and that defendant did the driving on this trip.

Frank Waugh testified for the Commonwealth, and his testimony in reference to the trips to Lexington with defendant and Hinkson and the selling of the property was substantially the same as that of the previous witness. He said that he had known Miller Patterson for several years and that he had associated with Silas Hinkson and the defendant. It appears from the evidence of the witnesses Hinkson and Waugh that when defendant asked them in Paris to go to Lexington with him he did not reveal to them the purpose of the trip, nor did they know that he had the stolen property until they reached Lexington and defendant began negotia-

tions for the sale of it. It is also shown by the evidence of Mrs. Bobbie Burke Boone, daughter of Mrs. Burke who bought some of the stolen property, that when Mrs. Burke started to write a check the defendant objected to taking a check, stating that he had some farm hands to pay and would rather have the cash. Mrs. Boone got in the car with defendant and his companions and drove to a neighbor merchant and secured cash for defendant for the purchase price of the property.

Lt. Ed Blue, a police officer of the city of Lexington, upon being informed of the theft of the property, made an investigation or effort to locate it and apprehend the guilty parties. He testified that he had a fugitive warrant for Miller Patterson who was wanted in Indiana, and also Patterson was charged with the theft of the property in question; that Patterson told him that he had sold some of the property to Woodrow Lairson and others, but he did not know who they were, but that Patterson did not tell him that he had sold any of the property to defendant; that he did not connect Patterson with the theft of the property other than his own admission that he had sold some of it. It appears that Patterson was taken back to Indiana and is now confined there in the penitentiary, and was not available as a witness. Lt. Blue said that he traced the number of the license plates on the truck used by defendant and his companions in transporting the property, and found that it was licensed in the name of Robert Fryman, brother of defendant.

Defendant, testifying in his own behalf, denied that he stole the property or had any connection therewith, or that he knew it was stolen property when he, Waugh and Hinkson purchased it from Patterson in Lexington. The alleged competent evidence in behalf of defendant, which was rejected by the court, is that the court sustained objections of the Commonwealth to the following questions asked defendant by his counsel:

"Please state whether or not Woodrow Lairson, his father and Patterson undertook to get Patterson to take all the guilt for the stealing of this property on himself, for any reason."

Upon the court's refusal to permit the witness to answer the question, this avowal was made:

"Counsel for Defendant avows that if the witness were permitted to testify, he would truthfully state

that on the Saturday-week following, Woodrow Lairson and his father and Patterson told the Defendant that Patterson should take the whole guilt on himself for the theft of the property from the Simms place, because Lairson had some children and Patterson should not tell that Lairson was with him when he and Lairson stole the property from the Simms place.''

It is thus seen that the avowal is not responsive to or in harmony with the question. The question merely asked the witness to state whether or not the persons named undertook to get Patterson to take the guilt for stealing the property, but it does not state the manner, nor any of the facts and circumstances relating thereto, nor had any witness testified to such facts or any predicate laid for any contradiction. The question in the form asked was very clearly incompetent and the court did not err in sustaining objections thereto.

The evidence before us discloses an irreconcilable conflict between the undisputed facts shown by the Commonwealth and defendant's testimony. It is shown by the uncontradicted evidence that the houses on the Simms' farm from which the property was taken, had been cleaned on Friday, May 16, and the property was there in the house on the evening of that day. It is shown that the property had been hauled away in a motor truck, which evidently was in the night, since it would be unreasonable to presume that a wholesale theft of that kind would occur in the daytime at those places. The defendant testified that he and his companions went to Lexington and happened to see Miller Patterson and Patterson told them that he had some ''stuff'' that he would like to sell; that about two days later he went back to Lexington and again saw Patterson and he then bought some of the stolen property from Patterson, and specifically stated that that was on Friday. It is also shown by the undisputed evidence of Mrs. Burke and other witnesses for the Commonwealth that defendant and his companions brought the property to her place of business on Saturday before May 20 which, of course, was on May 17, the day after the property was last seen in the house on the Simms' farm. According to defendant's testimony, Miller Patterson disclosed to him that he had the property for sale in Lexington two days before Friday the 16th, which would have been on Wednes-

day preceding that Friday; and, further, that on his second trip to Lexington Patterson sold him the property on Friday evening, the 16th, which was before the property was taken from the house on the night of the 16th.

Another circumstance that might be of some significance is that defendant refused Mrs. Burke's check for the property he sold to her, claiming that he wanted cash to pay farm hands. It is shown by his own testimony that he had been in Mexico in the early part of the spring and went from there to Indiana and from Indiana to his father's home in Bourbon county near the Simms' farm, and had been there only a few days before the theft was committed. Evidently he was not engaged in the farming business and had no farm hands to pay. In his testimony he offered no explanation of this incidence and apparently his statement that he wanted cash to pay farm hands was untrue. Furthermore, we find no denial in defendant's testimony that he told Woodrow Lairson that he had "hot stuff" for sale and that it came from the Simms' farm.

It is the well settled rule of law that when stolen property is found in the possession of a person, it is incumbent upon him to show that he legally acquired the property, and if there is any evidence of a probative nature, either direct or circumstantial, tending to contradict the claim of legal acquisition of the property, it is an issue for the jury and it may accept or reject the offered explanation as it may deem proper. Abshire v. Commonwealth, 281 Ky. 470, 136 S. W. (2d) 567; Isom v. Commonwealth, 283 Ky. 775, 143 S. W. (2d) 501.

We think the evidence in this record is far from being conclusive that defendant purchased the property. We conclude, therefore, that the evidence is amply sufficient not only to take the case to the jury, but also to sustain the verdict.

The complaint directed to the instructions is that the court failed to give a concrete instruction to the effect that if defendant purchased the property from Patterson he was not guilty of larceny. In the circumstances of this case we do not think the jury was misled because of the failure of the court to give such an instruction. The indictment charged that defendant stole the property from the owner and defendant denied that he stole the property and claimed that he bought it of Patterson.

The court instructed the jury, in substance, that they would find defendant guilty if they believed from the evidence, beyond reasonable doubt, that defendant "did with force and arms unlawfully, wilfully and feloniously take, steal and carry away from, against the will and without the consent of the owner, certain antiques of the value of more than $20.00, * * *." The jury heard and no doubt understood defendant's defense that he did not take, steal and carry away the property from the owner, but that he bought it of Miller Patterson not knowing it was stolen property. To illustrate the point, if defendant had admitted that he took the property from the owner and had defended upon the ground that it was with the consent of the owner, or his agent or representative, or other facts or circumstances which might have justified the taking of the property, in that event an instruction on the theory of the defense would have been necessary. But, since defendant denied taking the property or having any knowledge of or connection therewith, and defended solely upon the ground that he bought the property in good faith from another person, we think the issue was clearly drawn as to whether defendant stole the property or purchased it and, therefore, the jury could not have been confused or misled because of the failure of the court to give the instruction insisted for.

The next complaint against the instructions is that the court did not give an instruction as required by Section 241 of the Criminal Code of Practice relating to the evidence of accomplices. It is true that some of the witnesses who testified for the Commonwealth were jointly indicted with defendant, but none of them testified that defendant stole the property. Their evidence relates to his possession, transportation and sale of the property, and is substantially the same as defendant's own testimony in that respect. It is insisted in brief for defendant that even the evidence of the alleged accomplices does not tend to connect defendant with the theft of the property but merely relates to the possession, transportation and sale of the property. An accomplice, in the meaning of the law, is one of several equally concerned in the commission of a crime, either as principal or one who aids or abets in the commission of a crime. In the present case the witnesses who were jointly indicted with defendant, the alleged accomplices, testified that they did not steal the property or had any connection therewith, nor did they testify that defendant stole the prop-

erty, and since their evidence is substantially the same as that of defendant it was not error to fail to instruct the jury on corroboration of their testimony as required by the Code, supra. Finch v. Commonwealth, 92 S. W. 940, 29 Ky. Law Rep. 187; Anderson et al. v. Commonwealth, 203 Ky. 681, 262 S. W. 1105; Clift v. Commonwealth, 268 Ky. 573, 105 S. W. (2d) 557. The last three cases cited, supra, hold that a confession or admission by the defendant tending to prove his guilt corroborates the testimony of an accomplice. If it be conceded that the evidence of the indicted witnesses tended to connect defendant with the theft charged, yet, since defendant's own evidence was substantially the same, it would have furnished the necessary corroboration. It follows that the court did not err in failing to give an accomplice instruction.

Finding no error prejudicial to defendant's substantial rights, the judgment is affirmed.