## Sams v. Commonwealth.

May 21, 1943.

Ben B. Morris for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, Thelma Sams, has been convicted of murdering her husband by being an accessory before the fact and sentenced to life imprisonment. The most important and the closest question is the sufficiency of the evidence tending to corroborate the testimony of Thomas Russell who killed him. Sams, his wife and two daughters, about 13 and 15 years old, lived in a comfortable home on a farm near Barlow. Russell, a neighbor boy, had been employed off and on by Sams to work on the farm for about three years, and stayed in his home much of the time. When Russell killed Sams he was about 20 years old and Mrs. Sams some 16 years his senior. They began illicit relations in August, 1941, when the husband was temporarily working in Indiana, and continued those relations with regularity. Difficulties between Sams and his wife became acute in the early part of 1942 and she sued him for a divorce. She claimed he was running around with his first wife and other women, and was drinking and wasting the estate she had helped him accumulate. Two weeks before he was killed, he returned home from Detroit where he was working and the divorce proceedings were dismissed.

On the morning of February 17, 1942, Russell shot

Sams when he came to the barn to do the milking, and he died that afternoon in a hospital in Cairo, Illinois. Russell testified that he did it because of Mrs. Sams' commands and insistence, some of which he described, and that she had often told him if he did not do it she would have her husband kill him. She had suggested that he leave the pistol by his side to make it appear that Sams had killed himself, and said she would have the radio operating so loud the children would not hear the shot. He testified also she had lately told him of Sams' threats to "whip hell out of me;" that he had come there to talk with Sams to get him to stop cursing and talking about him and that he killed Sams in self-defense when he assaulted him with a plank. If he had not attacked him he would not have shot him.

Russell's testimony clearly brought the defendant within the class of an accessory before the fact, which is defined at common law, and not changed by the statute, to be one who was not present, actually or constructively, when the crime was committed, but who counseled, incited, instigated, procured or commanded the one who did the act to do it. The offender is distinguishable from an aider and abettor by the fact that the latter must be present at the commission of the offense. Roberson's Kentucky Criminal Law, Sec. 188; 14 Am. Jur., Criminal Law, Secs. 96, 101; 22 C. J. S., Criminal Law, Sec. 90; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075; Shelton v. Commonwealth, 261 Ky. 18, 86 S. W. (2d) 1054. Perhaps the more fundamental distinction is that the guilt of an aider and abettor is determinable by his motives and actual participation, while the guilt of an accessory before the fact is determinable by his influence over the actual perpetrator of the offense. See Fuson v. Commonwealth, 199 Ky. 804, 251 S. W. 995.

Section 241 of the Criminal Code of Practice prohibits a conviction upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant with the commission of the offense." Section 242 provides that in all cases where corroborating testimony is requisite to a conviction, if there is none, the court shall instruct the jury to render a verdict of acquittal. Intermediate of our earlier construction of these statutes and Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, it was sometimes said that the corroborative evidence must itself have been sufficient

to establish the guilt of the accused independent or exclusive of the accomplice's testimony. In that case the court reviewed the rationale of the rule requiring corroboration and our previous decisions and held that construction was too strict and that it is sufficient if there be any evidence corroborating the accomplice's testimony tending to connect the defendant on the trial with the offense, although in testing the corroborative evidence the accomplice's testimony must be disregarded. Miller v. Commonwealth, 285 Ky. 251, 147 S. W. (2d) 394. Proof of a culpable admission by the defendant or acts inconsistent with innocence, or other circumstances, may be sufficient to meet the terms of the statute in respect to corroboration. Anderson v. Commonwealth, 203 Ky. 681, 262 S. W. 1105; Goodin v. Commonwealth, 256 Ky. 1, 75 S. W. (2d) 567; Clift v. Commonwealth, 268 Ky. 573, 105 S. W. (2d) 557.

With the foregoing guide before us, we examine the testimony which may be regarded as "tending to connect the defendant with the commission of the offense," namely, the commission of the offense of an accessory before the fact of murder.

Sams was killed with his own pistol. It had been kept in "the quilt box" which apparently was in the custody of his wife. It was lying by the side of the wounded man where the accomplice testified she had suggested it should be placed to give the impression of suicide. Russell testified that he found it that morning in the barn loft at his home. When she and her daughters heard the shots and the call of the wounded man, they ran to the barn. Mrs. Sams went directly to the loft. The girls found their father at the back of the barn lying in the mud. When a neighbor took the pistol to the house she told him to put it in the quilt box, and asked "would they use the pistol in the trial." This tended to show a knowledge that somebody was guilty of killing her husband and would come to trial. A babbling and somewhat cryptic love letter from Russell, apparently written after the killing, was found among her effects after she had been arrested. That morning the radio was being operated so loud as almost to drown out the sound of the shots, but one of the girls testified her father had turned it on while her mother was cooking breakfast. All the facts testified to by the defendant on her trial respecting Russell's threats had been concealed from the neighbors

and officers on the morning of the killing and had not been fully disclosed at a court of inquiry conducted a few days later. She then believed, as she testified, that her husband had committed suicide as he had threatened to do, it appearing that he had been injured in his head in an automobile accident sometime before and felt himself "gone haywire," as he put it. On that judicial investigation of the homicide the widow was advised of her constitutional immunity and right to decline to testify. Nevertheless, she did so and revealed the illicit relations with Russell and that Russell had threatened to kill her husband if she did not quit him and marry Russell. She admitted that she talked about marrying him if he did kill her husband. Asked what the plan was, she responded "I would be supposed to find him dead some morning." From what her husband had said, she knew there were no shells in his pistol, but Russell had said that he would get some. The implications of these admissions are apparent. It is fair to say that the appellant on the court of inquiry qualified her testimony in a degree by saying that it was based upon what Russell had said he was going to do and denied any participation in the killing. Her explanation on the trial is substantially the same.

The defendant denied having suggested, counseled or procured Russell to kill her husband or that she had any agreement with him to do so. Upon two occasions, after she and her husband had become reconciled, she had told Russell that they were getting along all right and for him to leave her alone and stay away from her. But there are some implications contained in the defendant's testimony before the jury. There are admissions that Russell had been infatuated with her for several years and she had been freely yielding herself to him for seven or eight months during her husband's absence. He had repeatedly threatened to shoot and kill her husband if she did not leave him. He had several times said that he would shoot him some morning at the barn. On Saturday before he was killed on the following Tuesday, she had met up with Russell at a store in town, where she had gone with her husband, and warned Russell that her husband had threatened to have him arrested, and he had replied, with an oath, that he had better not put his hands on him. At one place in her testimony she said that she had told her husband about Russell's threats, but he had laughed and said "the boy

hasn't got the guts to do it." At another place she testified that she had told her mother and the mother had told her husband. Russell had come to the house one day after the killing and Mrs. Sams admitted having remonstrated with her mother for having told him to stay away.

All these admissions may be regarded as showing a knowledge and concealment or perhaps passive acquiescence and sanction of Russell's intention to kill her husband, although it does not constitute the widow an accessory before the fact. Roberson's Kentucky Criminal Law, Secs. 181, 189; Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 19 Ann. Cas. 140, 136 Am. St. Rep. 192; Elmendorf v. Commonwealth, 171 Ky. 410, 188 S. W. 483.

The dangers which developed the rule requiring the corroboration of testimony of an accomplice, namely, the false incrimination of another in the crime because of expectation of saving himself, spite, revenge, self-protection, or some other wicked purpose, do not seem to be present in this case. If there is any motive or reason for Russell to involve the defendant in his own confessed crime, it is covered up. These two circumstances are to be weighed in connection with the other testimony tending to corroborate the accomplice. The presence of a motive on the defendant's part and her admitted knowledge and attitude, coupled with the absence of an exposed motive on the part of the accomplice to incriminate her, we think require less additional evidence than if the conditions or either of them were otherwise. We are of the opinion, therefore, that the evidence tending to corroborate the testimony of the accomplice that the defendant was guilty of being an accessory before the fact to the murder of her husband is sufficient.

Both at common law and under our statutes the punishment of an accessory before the fact and the chief actor is the same. KRS 431.160, formerly Sec. 1128, Ky. Stats. That statute also provides that an accessory before the fact to a felony "may be prosecuted jointly with the principal, or severally, though the principal is not taken or tried." By virtue of that statute an accessory before the fact is regarded as a principal and his trial and conviction may be entirely independent of that of the one who actually perpetrated the deed. Even his acquittal has no effect. This statute and its effect has stripped the offense of some confusing distinctions of

the common law. But, of course, it cannot subsist without someone else being guilty of the actual commission of the felony, so the Commonwealth is not relieved of the necessity of establishing the guilt of such person in order to convict an accessory before the fact. Begley v. Commonwealth, 82 S. W. 285, 26 Ky. L. R. 598; Cummings v. Commonwealth, 221 Ky. 301, 298 S. W. 943; Commonwealth v. Long, 246 Ky. 809, 56 S. W. (2d) 524.

Russell and Thelma Sams were indicted jointly. Mrs. Sams asked for and was granted a separate trial. Her motion that the Commonwealth be required to try Russell first was overruled. The appellant's argument that this was error seems to be rested upon common law practice and conception of the crime as one wholly dependent upon the conviction of the principal. There is no merit in the point that she should not have been tried first in view of the statute expressly auhorizing such procedure.

As we have disclosed, Russell's testimony made a clear-cut case of his own guilt and of the defendant on trial as an accessory before that fact. But his claim that he had gone to the place on a peaceful mission and shot Sams only when he was attacked presents the question whether or not the defendant was entitled to an instruction on voluntary manslaughter based upon the finding by the jury that Russell had killed the man in sudden heat and passion. The court gave her the benefit of an instruction to find her not guilty if Russell had killed her husband in self-defense. It is hard to conceive of one being guilty of an accessory before the fact to an unlawful homicide where it was sudden and unpremeditated and arose out of sudden heat and passion. That one cannot be is so held by the authorities. Roberson's Criminal Law, Sec. 182, citing several leading textbooks on criminal law. Perhaps such a case could arise, but not where there was a long-time pre-arrangement. The defendant was charged in the indictment and the evidence of the Commonwealth showed that her intent was to have her paramour murder her husband. The gist of murder is such a malicious and premeditated intent. The relationship of the two charged with the commission of the crime is not unlike that which exists in a conspiracy to kill a man, viz., if the parties agreed or conspired to kill him, there is no place for a manslaughter instruction, Marion v. Commonwealth, 269 Ky. 729, 108

S. W. (2d) 721, and even the right of self-defense is denied. Richmond v. Commonwealth, 255 Ky. 758, 75 S. W. (2d) 500, 501. The instructions predicated the defendant's conviction upon belief by the jury beyond a reasonable doubt that Russell was guilty of murder (submitted in the usual form) and their further belief from the evidence beyond a reasonable doubt that the defendant, Thelma Sams, "did wilfully, feloniously and with her malice aforethought advise, procure, encourage or command the said Thomas Russell in the killing of the said Ed Sams and that said killing was induced thereby," and that Russell had not killed him in self-defense. Under this instruction, if the jury did not believe Russell was guilty of murder, they could not find Thelma Sams guilty of any crime. It is of interest to note the record showing that after deliberating upon the case the jury asked the court for some other instruction which would permit them to give the defendant a lighter punishment than that set out in the submitted instructions, which the court declined to do. Some other jury may believe a part of Russell's story and find him guilty of voluntary manslaughter or believe all of it and find him not guilty; but under the statute that can make no difference in the prosecution or conviction of this defendant as an accessory before the fact to the crime of murder.

A question is made as to the competency of the testimony as to the defendant's admissions before the court of inquiry because of the manner of its presentation. It is submitted that it was within the rule respecting proof of only a part of a statement of a party, and that all of it should have been disclosed. It appears that the stenographic report of the testimony was available to the defendant, and her counsel was at liberty to have developed any explanation which had been made of that part of her testimony put before the jury. The stenographer had testified that such and such questions were asked her and she had given certain answers. The fact that several of the county officers also testified from memory to her admissions and did not purport to relate everything she had said did not render their testimony incompetent. That went to its weight. The witnesses were subject to cross-examination on that matter. Neither were the admissions, although obtained by questioning, inadmissible under the anti-sweating act. KRS 422.110. They were made in a judicial proceeding authorized by Sec. 32 of the Criminal Code of Practice, after the accused had

been acquainted with her privilege and right not to testify.

The court submitted an instruction based upon the defendant's evidence tending to show she may have recanted and had withdrawn any encouragement or procurement of the killing of her husband which she may have given Russell. It is in this language:

"The court instructs the jury that if you shall believe from the evidence beyond a reasonable doubt that the defendant, Thelma Sams, did advise, encourage, procure or command the said Thos. Russell to kill Ed Sams, and if you shall further believe before the perpetration of said crime that the defendant, Thelma Sams, repented and countermanded her advice, encouragement, procurement, etc., and did all in her power to prevent the commission of said crime, in that event the law is for the defendant, Thelma Sams, and you will so find. The court further instructs the jury that mere disapproval, however, after having counseled the crime without any effort to prevent its commission, or mere withdrawal without the knowledge of her co-defendant, Thos. Russell, will not relieve the defendant, Thelma Sams."

The instruction follows closely the law as stated in Sec. 189, Roberson's Kentucky Criminal Law. The appellant criticizes the instruction because it did not go so far as to say that if the jury believed that the death of Sams was caused independently of the defendant's advice or procurement they should find her not guilty. We think the given instruction had the effect of doing that very thing. The first instruction, as we have stated, predicated the finding of her guilt upon the belief that Russell had killed her husband because of her advice and procurement and this instruction affirmed and emphasized it. We think that was as far as the court should have gone and properly omitted a specific, concrete instruction negative in character. This is not an affirmative defense by way of excuse or avoidance. Stanley on Instructions to Juries, Sec. 771.

The argument of the Commonwealth's Attorney in several particulars is made a ground for reversal of the judgment. Some of it cannot be regarded as dignified legal argument. That is especially coarse which placed

the testimony of the county officers as to the defendant's admissions on the court of inquiry in juxtaposition with her testimony on the trial, and then insisted that the jury would have to find the officers "lied" in order to acquit her. The argument was improper; but we do not regard that or any other part as being a prejudicial error.

The judgment is affirmed.