# Richmond v. Commonwealth.

(Decided Oct. 19, 1934.)

STEPHENS & STEELY and WILLIAM B. EARLY for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and J. B. JOHNSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On Thursday, September 7, 1933, Press Perkins disappeared. On Friday, September 15th, beneath a shelving rock at the foot of a cliff, his partially decomposed body was found with a wound upon the head behind the left ear that had produced his death.

Ancil Richmond, Jim Canada, Albert Canada, and Everett Canada were charged by indictment with his murder, and upon his separate trial Richmond was convicted, his punishment fixed at life imprisonment, and he has appealed.

### The Evidence.

This killing grew out of keen moonshining competition, a sort of moonshiners' war. The operation of six different neighboring plants is disclosed in this record.

The dead man weighed about 110 pounds, was about 65 years of age, was a drinking and quarrelsome man, and he and those accused of his murder and almost all of the 49 witnesses were shown to be either directly or indirectly engaged in moonshining.

Richmond and Perkins had had a fight at the previous election; Richmond was suspected by Perkins of having stolen certain parts of Perkins' moonshine plant, some quilts, some honey, and two of his barrels. He in turn suspected Perkins of having reported him to the authorities. He had made threats that if Perkins "messed" in his business he would turn up missing.

There was evidence that Richmond and Everett Canada claimed they had found Perkins putting powders in their barrels and that they were aiming to kill him for it. Early Thursday, September 7th, one of the moonshining associates of the accused discovered some one had overturned all seven of their barrels containing their mash; he notified Jim and Albert Canada, who armed themselves and started with him to their still.

On the way they met Perkins and talked with him about when his stuff would be ready to run, then passed on, without mentioning the destruction of their stuff, and it is the commonwealth's theory that they backtracked Perkins from this place where they met him to their still. Soon Everett Canada and Richmond came to the still and they, too, were armed. They began to look about where their stuff had been poured out and soon went off into the woods, Richmond and Jim Canada leaving together. Later these two separated, and in

their testimony they give different reasons why they separated.

About noon Jim Canada came to his home, got a foxhorn, and going out into his yard blew it lustily. Soon Richmond came in. They ate a lunch, then taking an axe and their guns they re-entered the woods.

That night they got a wagon and moved their still, barrels, etc. It is needless to recount all the many things said and done during and after the search that tended to connect these men with the death of Perkins. Shortly after Perkins' body was found, James Bray, a 16 year old boy, was picking peas near the road. Richmond and Albert and Everett Canada passed along. They were talking and Bray could hear them, and he testifies that Everett Canada said, "I ain't no murderer," and Richmond replied, "I am, I killed Press Perkins." Richmond of course denied making this statement. Albert Canada gave thirty-eight pages of testimony, but he failed to deny this, and Everett Canada did not testify. It is claimed there was no evidence to sustain this verdict, but this boy's evidence alone is enough. Between the testimony of this boy and Richmond's denial the jury believed the boy.

### The Instructions.

Richmond asked for a peremptory instruction to acquit him, but in view of the evidence that was properly refused.

He complains of instruction No. 1, which is really three instructions in one.

It correctly told the jury under what circumstances it should find Richmond guilty of murder, when to find him guilty of manslaughter, and the punishment that could be imposed upon him.

This instruction was evidently copied from the instructions approved in Stout v. Com., 123 Ky. 184, 94 S. W. 15, 29 Ky. Law Rep. 627, 13 Ann. Cas. 547 (see it in Brickwood-Sackett on Instructions, sec. 2988); Cavanaugh v. Com., 172 Ky. 799, 190 S. W. 123 (copied from sec. 742, p. 890, Hobson on Instructions); or Coleman v. Com., 207 Ky. 301, 269 S. W. 321. Richmond insists this instruction should have followed the form used in Ball v. Com., 125 Ky. 601, 101 S. W. 956, 31 Ky. Law Rep. 188, and Burns v. Com., 136 Ky. 468, 124 S. W. 409, and he cites the case of Strange v. Com., 254 Ky. 57, 70 S.

W. (2d) 972, in support of his contention that the phrase, "if you shall believe from the evidence beyond a reasonable doubt," should have been repeated in his case as it was in the cases of Burns and Ball, supra. He has misunderstood the Strange Case; it does not so hold. We discussed this question with elaboration in the case of Shelton v. Com., 255 Ky. 745, — S. W. (2d) — , this day decided, and it is not necessary to do so again.

He makes two complaints of instruction No. 2, the one on aiding and abetting: (a) He wants the phrase that requires the jury to believe from the evidence to the exclusion of a reasonable doubt to be repeated two or three times in the course of the instruction; but as this instruction began with that phrase there was no need for its repetition. (b) He says this instruction is erroneous because it requires the killing to be done maliciously instead of requiring that the aiding, etc., be done malicously; but this one phrase copied from it shows he is mistaken: "If you believe him guilty of aiding and abetting with malice aforethought, etc." Instruction No. 2 was not erroneous.

Instruction No. 4 presented the issue as to Perkins' having been killed pursuant to a conspiracy, and Richmond says it is faulty because, as he alleges, it assumes a conspiracy existed and gives him no right of self-defense. Again he is mistaken, for this instruction begins with the word "If" and requires the jury to believe from the evidence, to the exclusion of a reasonable doubt, the men indicted formed a conspiracy to kill Perkins and that he was killed by one or more of them pursuant thereto before a verdict of guilty can be returned, so his first complaint is without merit, and as to self-defense, if this killing was done as outlined in this instruction and as portrayed in the evidence, he was not entitled to self-defense.

Richmond says the general instruction on self-defense was erroneous, but we need not discuss that. There was no eyewitness to this killing, it is true, but there was also no evidence of a struggle, and to submit a question of self-defense would be to invite the jury to guess it so happened without any evidence to support such a finding. He should be grateful for the instruction he got on self-defense, for he was not entitled to any. We do not, however, find any fault in this instruction.

His complaint of the instruction defining a deadly weapon is utterly devoid of merit. He contends it assumes Richmond struck and killed Perkins, when this instruction begins with the words, "If the jury believe from the evidence," etc., and later in it we find the words "if he did so strike," etc.

In the conclusion of his brief it is argued for Richmond that the attorney for the commonwealth took advantage of him in his argument; but, as the bill of exceptions does not contain what was said, we cannot consider it.

Judgment affirmed.

Whole court sitting.