Gordon Dale LeGRANDE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Frederick P. JOSEPH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Roger WITHERS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

May 4, 1973.

H. Wayne Riddle, Miller, Griffin & Marks Lexington, for appellant Gordon Dale LeGrande.

Larry S. Roberts, Lexington, for appellant Frederick P. Joseph.

Henry E. Hughes, Lexington, for appellant Roger Withers.

Ed W. Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Gordon Dale LeGrande, Frederick Paul Joseph, and Roger Withers were indicted on several counts of setting up or assisting in setting up a gambling contrivance (specifically, football-game point-spread cards) in violation of KRS 436.230. LeGrande was convicted on five counts, and his punishment amounted to three years' imprisonment and a fine of $2,500. Joseph was convicted on two counts, and was sentenced to two years' imprisonment and a $1,000 fine. Withers was convicted on only one count, on which he received a one-year sentence and a fine of $500.

Each had his own separate counsel and each has separately appealed his conviction, which appeals have been consolidated for hearing. The contentions made on appeal are not the same as to each appellant, so we shall discuss each man's contentions separately.

◼ LeGrande's first claim of error concerns the trial court's denial of motions for discovery. The primary prosecution witnesses were two undercover police agents. In testifying, each stated that he had prepared written notes and reports, and some tape recordings, during the course of investigation, and had given them to his superior officer or to the prosecuting attorney. Officer McCubbin testified first. LeGrande's counsel moved under RCr 7.26 that the notes, reports and tapes prepared by Officer McCubbin be produced for examination. The prosecuting attorney opposed the motion on the ground that the rule did not apply to "work products." The trial judge overruled the motion without stating reasons. Subsequently when Officer Collins testified, LeGrande's counsel made the same motion as to his notes, reports and tapes, and the judge again overruled the motion, this time stating his opinion that "these were reports made pursuant to their duties as investigating officers, and as such do not come within the purview of this rule."

It is our opinion that the trial court's rulings on the motions to produce were erroneous. RCr 7.24, which applies to *pretrial* discovery, expressly excludes work products of investigating law officers, by this language in subsection (2):

"This provision does not authorize pretrial discovery or inspection of reports, memoranda, or other documents made by officers and agents of the commonwealth in connection with the investigation or prosecution of the case, or of statements made to them by witnesses or by prospective witnesses (other than the defendant)."

No similar exclusion is contained in RCr 7.26, which relates to discovery, after a witness called by the commonwealth has testified, of documents or recordings relating to the subject matter of the witness' testimony. We think that the failure of RCr 7.26 to set forth the exclusion stated in RCr 7.24 clearly evinces the intent of the rule that the exclusion does not apply to discovery after the witness has testified, as distinguished from pretrial discovery.

◼ Since the convictions rested primarily on the testimony of the two investigating officers, we think that the denial of the motions to produce must be considered prejudicial, so as to require reversal. Accordingly, we are reversing LeGrande's convictions on that ground. (As hereinafter will appear, we are reversing Joseph's convictions on the same ground, but not Withers', because he did not assert that ground.)

◼ LeGrande makes two other contentions, with respect to the instructions, which we shall consider since the questions could arise on a new trial. The instructions authorized conviction on a finding that LeGrande set up or operated, or assisted in setting up or operating a contrivance used in betting. LeGrande maintains that the evidence showed only that he *assisted* in setting up a gambling contrivance, whereas the instruction permitted the jury to find that he set up and operated the contrivance. In our opinion this is a specious argument, because in the use of football-game point-spread cards for gambling we think there is no real dividing line between setting up and operating, and assisting in so doing. The evidence was that LeGrande delivered the cards to various bars and nightclubs where they were used by customers with which to place bets. It would appear to make no real difference whether this be classed as setting up and operating or merely assisting in so doing.

LeGrande's second attack on the instructions relates to their alleged failure to re-

quire the jury to find that LeGrande knew that the cards would be used for gambling. The instructions did require that the jury find that the cards "were intended to be used" for betting. We think any questions as to the sufficiency of the instructions would be eliminated if they were so worded as to make it clear that the jury must find that *LeGrande* intended the cards to be used for betting.

Appellant Joseph claims error, as did LeGrande, in the denial of the motions to produce the notes, reports and tapes made by the investigating officers. The record recites that the motion to produce made by LeGrande's counsel, after Officer Mc-Cubbin had testified, was "made on behalf of all defendants," and was "joined by all defendants." Thus Joseph is entitled to claim the error, and we are reversing his conviction for that error.

Joseph claims other errors which we shall consider because they may arise again on another trial.

■ Joseph was convicted on two counts. He claims he was entitled to a directed verdict as to each count because the evidence would not warrant a conviction on either count. This contention relates to the *dates* of the charged offenses. The indictment alleged that one offense was committed "on or about" October 12, 1971, and the other "on or about" October 20, 1971. In response to a motion for a bill of particulars, the Commonwealth filed a bill stating that the offenses were committed, respectively, *on* October 12 and October 20. The evidence, however, showed offenses on October 13 and October 23. Joseph maintains that this was a fatal variance. We are not so persuaded, absent any showing by Joseph as to how he was prejudiced by the variance. In a similar situation, where an indictment for incest charged that the offense was committed "in June or July, 1960," and the Commonwealth filed a bill of particulars stating the date of the offense was July 20, 1960, but the proof was that the offense was committed on

July 30, this court held that the evidence sustained the conviction, stating that "no greater importance should be attributed to the bill of particulars than to the indictment where uncertainty exists as to when an alleged violation took place." Browning v. Com., Ky., 351 S.W.2d 499.

■ Joseph next argues that there was error in the denial of a preliminary hearing. (He was arrested on a warrant, and a preliminary hearing was scheduled for a certain date, but before that date he was indicted by a special grand jury, so the preliminary hearing was cancelled on the basis that where the charge is by indictment no preliminary hearing is required.) The denial of a preliminary hearing could not constitute prejudicial error as to Joseph's future new trial, because the only reason why he wanted a preliminary hearing was for discovery purposes, and as a result of his first trial he has had the equivalent of full discovery. See Dixon v. Commonwealth, Ky., 487 S.W.2d 928.

■ Another claim of error by Joseph is that in his charge to the special grand jury which returned the indictment, the trial judge adopted the role of an advocate and undertook to impart to the grand jury matters of his personal knowledge and opinion concerning the prevalence of gambling in the community. A motion to dismiss the indictment on that ground was overruled. Joseph undertakes to equate the charge in this case with the one in People v. Both, 118 Misc. 414, 193 N.Y.S. 591, where the indictment was dismissed because of the nature of the judge's charge. There, however, the grand jury initially had refused to indict, and the judge's subsequent charge to them was in such strong terms as being interpretable as a command to return an indictment. The charge in the instant case warrants criticism as giving some indication of overzealous advocacy on the part of the judge, and as getting into the area of the judge's personal knowledge of conditions of crime, but the charge was not comparable to the

one in the New York case and it is our opinion that it was not of such improper character as to invalidate the indictment.

■ Joseph's final contention is that he was entitled to an instruction on what he calls the "lesser offense" of common gambling proscribed by KRS 436.200. That statute provides a penalty for engaging in any hazard or game on which money or property is bet, won or lost "in any case in which no other penalty is prescribed." This statute does not establish a lesser offense of the crime of setting up or operating a gambling contrivance, defined by KRS 436.230. Therefore, Joseph was not entitled to an instruction under KRS 436.-200.

We come now to Withers' appeal.

Withers does not claim error in regard to denial of discovery as to the notes, reports and tapes made by the investigating officers, so he is not entitled to a reversal of his conviction on that ground. However, he does assert a ground of error which in our opinion requires reversal of his conviction.

■ The primary evidence against Withers (who was convicted only on one count) was that on one occasion LeGrande delivered point-spread cards, in an envelope on the outside of which was written the name "Roger" (Withers' first name), to a bar which Withers formerly had owned but which had been transferred to his former wife in a divorce settlement. Withers took the stand in his own defense. He admitted knowing LeGrande but denied any connection with the bar or with point-spread cards. He said he did not know what business LeGrande was in, and that his own business was breeding horses. After the Commonwealth had completed cross-examining him, the trial judge undertook to question him as follows:

"THE COURT: You work with a home improvement contractor on Sparta Court any time, Mr. Withers?

MR. HUGHES: Your honor, I object to the Bench's questions unless it relates in some way to this charge. I have no idea what the Court has in mind, but it can't be related to what we're talking about today. I have to strongly object to the Court asking the question.

THE COURT: Now, I'll ask you, do you work with a home improvement contractor who has a place of business on Sparta Court in any connection?

A. Work with anybody on Sparta Court? No, I do have— The gentleman, I think you're probably referring to —

THE COURT: Mr. Russ Michaels.

A. Right. I do have horses on his farm.

X11 Have you ever been to Las Vegas with Mr. LeGrande?

A. No, I have not.

X12 How about Lake Tahoe?

A. I've never been to Lake Tahoe.

X13 Do you know a man Dave?

A. No, I don't."

The name Russ Michaels had not previously been mentioned in any testimony, and there had been no reference to a home improvement contractor on Sparta Court. LeGrande had testified that a man named "Dave" had told him to deliver 400 point-spread cards, in an envelope with the name "Roger" on it, to the Zebra Bar (Mrs. Withers' bar). The question by the judge as to whether Withers knew a man named "Dave" probably was not prejudicial, but we think the other questions plainly were improper and prejudicial. A natural inference that the jury might draw from the questions about the home improvement contractor on Sparta Court, Russ Michaels, was that he had some connection with gambling and that Withers probably had some connection with him that the rules of evidence would not permit to be shown,

similarly, there was an implication of undisclosed gambling activities in the questions about going to Las Vegas or Lake Tahoe with LeGrande. The questions put the judge in the role of a prosecutor rather than an arbiter. See Fyffe v. Commonwealth, 256 Ky. 145, 75 S.W.2d 683; Davidson v. Commonwealth, Ky., 394 S.W.2d 911; 53 Am.Jur., Trials, sec. 75, p. 74.

We consider other issues raised by Withers, since they could arise again on a new trial.

■ Withers maintains that he was entitled to a directed verdict because the only evidence against him was that as to the delivery of the point-spread cards to his former wife's bar, in an envelope bearing the name "Roger". He argues that this evidence was not enough to warrant an inference of guilt. There was other evidence in the case, however, that on another occasion Withers was seen taking bets on point-spread cards from a man in his former wife's bar. Withers argues that the latter testimony had relevance only to another count of the indictment which count was dismissed, and therefore the evidence "was removed from the reach of the jury's consideration." We do not agree with that proposition. We think the evidence was admissible to show identity, intent, guilty knowledge, etc., in relation to the "Roger" envelope incident. See Francis v. Commonwealth, Ky., 468 S.W.2d 287; Jackson v. Commonwealth, Ky., 445 S.W.2d 835; Bell v. Commonwealth, Ky., 404 S.W.2d 462. Counting that evidence, we think there was enough evidence to sustain the conviction.

■ Withers makes the same contention as made by Joseph, that he was entitled to an instruction under KRS 436.200. We have answered that. Withers further argues that KRS 436.230 applies only to mechanical gambling contrivances and does not include such things as point-spread cards. We previously have held that this statute applies to "numbers" slips. Gilley v. Commonwealth, Ky., 312 Ky. 584, 229

S.W.2d 60. Point-spread cards fall in the same category, and we hold they come within the prohibition of the statute.

For the reasons hereinbefore stated, we are reversing the convictions of all three appellants.

The judgment of conviction of each appellant is reversed with directions for further proceedings in conformity with this opinion.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.