Denarrius **TERRY**, Appellant,

v.

**COMMONWEALTH OF KENTUCKY,**
Appellee.

No. 2003–SC–0237–MR.

Supreme Court of Kentucky.

Jan. 20, 2005.

Randall L. Wheeler, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, John R. Tarter, Office of the Attorney General, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Denarrius Terry, was convicted by a Logan Circuit Court jury of murder, robbery in the first degree, and wanton endangerment in the first degree, and sentenced to a total of forty-five years in prison. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting five claims of reversible error, *viz:* (1) admission of hearsay statements of a nontestifying accomplice; (2) limitation of defense cross-examination of an alleged eyewitness; (3) excessive examination by the trial judge of another alleged eyewitness; (4) admission of juvenile misdemeanor adjudications during the penalty phase of the trial; and (5) admission of improper victim impact evidence during the penalty phase of the trial. We reverse and remand for a new trial primarily because of the admission into evidence of a nontestifying accomplice's out-of-court statements that inculpated Appellant as the perpetrator of the offenses. We will also address other issues that are likely to recur upon retrial. *Springer v. Commonwealth,* 998 S.W.2d 439, 445 (Ky.1999).

In the early morning of December 25, 2001, the Russellville Police Department received a call that a shooting had occurred at Big Jessie's bar in Russellville, Kentucky. When the police arrived, they found Theodore ("Candy Man") Suggs shot dead inside the bar. Waiting outside were Nakeitha ("KiKi") Jackson, the owner of Big Jessie's, Calvin Merrell, the bartender, and Servado Boyd, a passer-by. Jackson and Merrell told police that they and Alexander ("RiRi") Browder had been present when Appellant shot and killed Suggs, but that Browder had fled the scene. Boyd had arrived after the shooting. Jackson told the police that Appellant and Suggs were "shooting" dice, that Suggs had won all of Appellant's money, and that Appellant had departed with the ostensible intent of getting more money. Upon his return, Appellant pulled a pistol and began shooting, killing Suggs and narrowly missing Jackson. Jackson then removed $300 to $400 from Suggs's vest and gave it to Appellant who then departed. Merrell gave a videotaped statement at the police station essentially agreeing with Jackson. Browder subsequently told police that he did not witness the shooting but that, as he was leaving Big Jessie's, he saw "out of the corner of his eye" Appellant pull something from his waist area. Once outside, Browder heard gunshots and left the scene.

When contacted by police, Appellant admitted that he was at Big Jessie's on the night of December 24–25, 2001, but denied shooting Suggs, claiming that Jackson,

Merrell, and Suggs were still in the bar when he left. The murder weapon, a handgun owned by Cantrell Nourse, was later found under a mattress in the bedroom of Nourse's residence. Appellant was charged with and convicted of the murder and robbery of Suggs and the wanton endangerment of Jackson. Nourse was charged in a separate indictment with complicity to murder and rob Suggs, as well as possession of marijuana and being a felon in possession of a handgun. At Appellant's trial, Nourse invoked his Fifth Amendment right not to testify. Thus, he was an "unavailable" witness as defined in KRE 804(a)(1).

## I. HEARSAY.

Julie Bogle, Nourse's domestic companion, testified that she and Nourse were asleep in bed when someone knocked on their door between 1:30 and 2:00 a.m. on December 25, 2001. Nourse went into the living room to answer the door. Bogle could hear Nourse talking with a person whom she recognized by voice as Appellant. Nourse then returned to the bedroom and retrieved something from between the bed's mattresses. Bogle could not see the object retrieved, but Nourse later told her that it was his handgun. Although there was no objection to this statement, a bench conference ensued concerning whether Nourse's statement fell within any exception to the hearsay rule. The trial court ultimately concluded that it did not. Defense counsel did not request an admonition to the jury to disregard the statement and no admonition was given.

Bogle then testified that Nourse returned to the living room and that she heard the front door shut. Nourse then returned to bed. Approximately twenty to thirty minutes later, Bogle heard another knock at the front door and Nourse again went into the living room. Bogle again

heard him talking with a person whom she recognized by voice as Appellant. Nourse re-entered the bedroom with a handgun, placed the gun in a dresser drawer, and began getting dressed. When Bogle asked him where he was going, he extended his hand to show her five empty shell casings and said that he "had to go take care of them." Nourse then left the house for about fifteen minutes. When he returned, Bogle overheard Nourse say, "Cuz, you've got it lit up like the Fourth of July down there." The trial court overruled Appellant's objection to this statement, apparently believing either that it was admissible as an adoptive admission, KRE 801A(b)(2), or that there was no proof that Nourse was addressing Appellant when he made the statement. Shortly thereafter, however, as Bogle was entering the bathroom, she observed Appellant in the living room. She also observed Nourse standing at the bathroom sink washing blood off of a wad of money.

When Nourse finally returned to bed at about 4:30 to 5:00 a.m., he told her that "it was Denarrius that had come in the first time and got his gun and he was bringing it back because he had killed a guy named 'Candy Man.'" The trial court overruled Appellant's objection to this testimony in the belief that it fell within the hearsay exception for admissions by a party. KRE 801A(b)(1). While that would have satisfied the hearsay aspect of a statement made by Appellant to Nourse, no exception applies to Nourse's repetition of the statement to Bogle. KRE 805; see *Thurman v. Commonwealth*, 975 S.W.2d 888, 893 (Ky.1998) (double hearsay admissible only if each part of the combined statements conforms with an exception to the hearsay rule). Nevertheless, when Bogle further testified that she did not know who had told Nourse that Appellant had killed "Candy Man," the trial court retroactively sustained the objection and admonished

the jury "to disregard the statement she made as to the statement Mr. Nourse made to her about who committed this act." Appellant's motion for a mistrial was overruled.

■ Bogle's testimony that Nourse told her that the object he retrieved from between the mattresses of their bed was his handgun fell within the hearsay exception for statements against interest, KRE 804(b)(3), as a declaration against Nourse's own penal interest since it implicated him in the murder of Suggs and in the additional offense of possession of a handgun by a convicted felon. *See Brock v. Commonwealth*, 947 S.W.2d 24, 31 (Ky.1997). As also required by KRE 804(b)(3), the statement was corroborated by proof that Nourse's handgun was used to kill Suggs. At that point, the hearsay statement tended to inculpate only Nourse and, no doubt, that was why defense counsel did not object to its admission. However, Bogle's later testimony that Nourse told her that he gave the gun to Appellant who then used it to kill Suggs was clearly inadmissible against Appellant. *Bruton v. United States*, 391 U.S. 123, 129 n. 3, 88 S.Ct. 1620, 1624 n. 3, 20 L.Ed.2d 476 (1968) ("We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, . . . the problem arising only because the statement was . . . admissible against the declarant. . . .").

■ The "Fourth of July" statement could not have referred to the shooting itself, if Bogle was truthful in her testimony that Nourse did not leave the residence until after he placed the gun in the dresser and showed her the spent shell casings. Under that scenario, a reasonable jury could assume that the "Fourth of July" statement referred to the presence of police vehicles with flashing lights at the scene of the crime. In fact, the prosecutor

admitted as much when the trial court inquired as to the relevancy of the statement and the prosecutor replied that Suggs's murder was the only exciting event that occurred in Russellville on Christmas morning, 2001. Of course, the jury could have disbelieved Bogle's exculpation of Nourse and believed that Nourse accompanied Appellant to Big Jessie's, and that the "Fourth of July" remark did refer to the shooting. Either way, Nourse's statement inferentially inculpated Appellant in Suggs's murder. Bogle was not present in the room with Appellant when Nourse made the statement and did not discover that Appellant was still in the residence until after the statement was made. She could not and did not testify that Appellant agreed or disagreed with the statement, or that he heard it and did not deny it. Thus, the statement was not admissible as an adoptive admission. Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.20[4], at 595 (4th ed. LexisNexis 2003) ("A statement may not be admitted as an adoptive admission unless it is established that the party heard and understood the statement and remained silent.") (citing *James v. Wilson*, 95 S.W.3d 875, 899 (Ky.App.2002); *Ray v. Ray*, 196 Ky. 579, 245 S.W. 287, 290 (1922)). *Compare Marshall v. Commonwealth*, 60 S.W.3d 513, 521 (Ky.2001); *Hodge v. Commonwealth*, 17 S.W.3d 824, 847 (Ky.2000).

■ Finally, as the trial court ultimately concluded, Bogle's testimony that Nourse told her that Appellant had used his gun to kill "Candy Man" did not fall under any exception to the hearsay rule. The Commonwealth's reliance on *Taylor v. Commonwealth*, 821 S.W.2d 72 (Ky.1990) (*"Taylor I"*) and *Taylor v. Commonwealth*, 63 S.W.3d 151, 166–68 (Ky.2001) (*"Taylor II"*) is misplaced. As here, *Taylor I* admitted an out-of-court statement

by a nontestifying accomplice in which the accomplice identified the defendant as the killer. As here, the accomplice was unavailable because he had exercised his Fifth Amendment privilege not to testify. Because the statement also inculpated the accomplice, it was admitted against the defendant as a statement against the accomplice's penal interest. 821 S.W.2d at 75. *Now see* KRE 804(b)(3). When the issue was raised again on appeal from the denial of an RCr 11.42 motion and following the United States Supreme Court's plurality decision in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), we noted that the statement also possessed "adequate indicia of reliability" demonstrated by "particularized guarantees of trustworthiness" so that its admission was authorized by *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). *Taylor II*, 63 S.W.3d at 166–67.

However, in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court not only reaffirmed the plurality opinion in *Lilly, id.* at 55, 124 S.Ct. at 1367 ("[A]ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule.") (quoting *Lilly*, 527 U.S. at 134, 119 S.Ct. at 1899), this time in the context of a majority opinion, but also overruled *Roberts, id.* at 69, 124 S.Ct. at 1374, thus removing any remaining underpinning for the admission of such evidence in *Taylor*. The Court specifically identified *Taylor II* as an example of the type of error attributable to *Roberts. Id.* at 64, 124 S.Ct. at 1371.

In *Crawford*, the defendant's wife had given the police a statement inculpating her husband but invoked the marital privilege to refuse to testify against him. *Id.* at 40, 124 S.Ct. at 1357. *Compare* KRE 504. The prosecution sought to introduce the wife's statements as statements against her own penal interest under Washington Rule of Evidence (WRE) 804(b)(3), which is identical to KRE 804(b)(3). *Crawford, supra*, at 40, 124 S.Ct. at 1358. The Supreme Court held that her statements were inadmissible because they were testimonial in nature and had not been subjected to cross-examination.

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability."

*Id.* at 61, 124 S.Ct. at 1370. Although Nourse's out-of-court statements inculpating Appellant were not testimonial in nature, the elimination of Rule 804(b)(3) and *Ohio v. Roberts* as vehicles for their admission renders them inadmissible. KRE 802; *Bruton*. The only remaining issue is whether the admonition given by the trial court cured the obvious prejudice caused by their admission.

It is presumed that the jury will follow a curative admonition. *Alexander v. Commonwealth*, 862 S.W.2d 856, 859 (Ky.1993), *overruled on other grounds by Stringer v. Commonwealth*, 956 S.W.2d 883, 891 (Ky.1997). This presumption is overcome only (1) when there is an overwhelming likelihood that the jury will be incapable of following the admonition *and* the impermissible testimony would be devastating to the appellant; or (2) when the question was asked without a factual basis *and* was inflammatory or highly prejudicial. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky.2003) (internal citations and quotations omitted). We conclude, as did the United States Supreme Court in *Bruton*, that Bogle's testimony that Nourse told her that Appellant killed

Suggs was so devastating as to be incurable by a mere admonition to disregard it.

[A]s was recognized in *Jackson v. Denno, supra* [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) ], there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. . . . Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect. . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28. The only distinction between *Bruton* and the case *sub judice* is that this was not a joint trial. However, *Bruton*'s concern in that regard related primarily to the fact that the statement was admissible against the declarant codefendant but not against the other codefendant. The issue was whether the jury could properly consider it against the declarant but disregard it with respect to his codefendant. Here, there is no question that the statement was inadmissible against Appellant, who is in the same position in this case as was the declarant's codefendant in *Bruton;* and there is no issue with respect to its admissibility against the declarant, *i.e.,* Nourse, because Nourse was not on trial. We perceive no significant distinction between the prejudice attending the use of a non-testifying codefendant's hearsay statements to inculpate a codefendant in a joint trial, as in *Bruton,* or in a separate trial, as in *Taylor.* Thus, we must reverse this case for a new trial both because of the admission of the "Fourth of July" statement, admitted over Appellant's objection, and because of the "Denarrius killed 'Candy Man' " statement, retroactively excluded pursuant to objection but too inflammatory to be cured by an admonition.

## II. DENIAL OF IMPEACHMENT.

■ Prior to the testimony of KiKi Jackson, Appellant notified the trial judge of his desire to impeach the witness by showing that he had been previously convicted of a felony and that he had failed to appear for sentencing. The trial court ruled that only evidence of the conviction was admissible for impeachment purposes. KRE 609(a). At the time this case was tried, KRE 608 provided that the credibility of a witness could be attacked or supported only by evidence in the form of opinion or reputation in the community. Thus, specific instances of wrongful conduct could not be used for impeachment purposes. *See also* CR 43.07. As amended in 2003, KRE 608 does not permit proof of specific instances of conduct by extrinsic evidence, but they may, "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ." KRE 608(b) (as amended). Even if this version of the rule were available to Appellant, the fact of Jackson's failure to appear at a sentencing hearing is not probative of his character for untruthfulness. Regardless, the pre–2003 version of the rule must be applied at retrial. KRE 107(b) refers to criminal actions "originally brought on for trial" prior to the effective date of the rules. Although KRE 107(b) deals only with the

effective date of the adoption of the rules, *i.e.,* July 1, 1992, the same principles apply to the adoption of amendments to the rules. *Blair v. Commonwealth,* 144 S.W.3d 801, 809 (Ky.2004). As pointed out in the Commentary to KRE 107(b), "cases tried ... under pre-existing evidence rules must be retried ... under the same rules if retrial ... becomes necessary." KRE 107(b), Drafters' Commentary (1989).

## III. EXAMINATION OF WITNESS BY TRIAL JUDGE.

Appellant asserts that the trial judge assumed the role of prosecutor when he conducted his own interrogation of alleged eyewitness Calvin Merrell in the presence of the jury. Merrell is an uneducated man ("I never went to school"), and to say that he testified hesitantly on direct examination by the prosecutor would be an understatement. The prosecutor elicited from Merrell that Appellant shot Suggs' and stole Suggs's money, but not much else. Merrell professed not even to recall "making a videotape" for Detective Edmonds. (The trial judge's suggestion that the prosecutor ask Merrell if he had "given a statement" to Edmonds went unheeded.) Satisfied, defense counsel declined cross-examination. The trial judge then asked Merrell 103 questions, eliciting substantially more facts surrounding the events of December 24–25, 2001, some of which corroborated and others of which contradicted KiKi Jackson's version of those events. Since we are reversing this case on other grounds, we need not address each area of inquiry made by the trial judge or decide whether he exceeded the boundaries of judicial interrogation. Nor do we intend by this opinion to inhibit trial judges from questioning a witness when warranted by the circumstances. KRE 614(b). However, since we have not previously construed KRE 614(b), we will do so now to provide

guidance in the event the issue recurs upon retrial.

 KRE 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." The drafters' Commentary points out that the rule merely "adopts well-established principles concerning judicial participation in the production of evidence," noting that "[b]ecause of the risk that judicial participation in the production of evidence might unduly influence the triers of fact, it is expected that courts will use this power sparingly and always with sensitivity to the potential for unfairness to the litigants." KRE 614(b), Drafters' Commentary (1989). From this, we conclude that the rule was intended to codify existing case law on the subject. Pre-rule cases emphasized that this is "not a practice to be encouraged for it is likely to lead the court into error, for it may indicate the views of the court upon the question of guilt or innocence of the defendant." *Fyffe v. Commonwealth,* 256 Ky. 145, 75 S.W.2d 778, 780 (1934).

> He may properly ask questions of a witness in order to expedite the orderly procedures of the trial.... But, in asking questions in the presence of the jury while the issues still hang in the balance, he should not allow his personal opinions to "leak into the crucible." ... The trial judge's observations and comments usually carry such weight with the jury that they must be subject to safeguards against abuse.

*Davidson v. Commonwealth,* 394 S.W.2d 911, 912 (Ky.1965) (internal citations omitted). Specifically, the trial judge cannot "by the form of his question or his manner indicate to the jury his opinion as to the credibility of the witness being interrogated or the guilt or innocence of the accused." *Caudill v. Commonwealth,* 293 Ky. 674, 170 S.W.2d 9, 10 (1943). And a judge should not express his opinion about

the veracity of a witness through the nature of his questioning, especially through leading questions. *Collins v. Com.,* 297 S.W.2d 54, 56 (Ky.1957). Of course, a trial judge cannot ask questions that place him "in the role of a prosecutor rather than an arbiter." *LeGrande v. Commonwealth,* 494 S.W.2d 726, 731 (Ky.1973).

> A trial judge should never assume the role of prosecuting attorney and lend the weight of his great influence to the side of the Government.... In our system of administering justice the functions of the trial judge and the prosecuting attorney are separate and distinct; they must not be confused. The trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution.

*United States v. Sheldon,* 544 F.2d 213, 218 (5th Cir.1976) (internal citations and quotations omitted). Federal courts have identified three factors that determine whether a trial judge has good reason to inject him/herself into the trial.

> First, in a lengthy, complex trial, judicial intervention is often necessary for clarification. Second, if the attorneys in a case are unprepared or obstreperous or if the facts are becoming muddled and neither side is succeeding at attempts to clear them up, judicial intervention may be necessary for clarification. Third, *if a witness is difficult,* if a witness' testimony is unbelievable and counsel fails to adequately probe, or if the witness becomes inadvertently confused, judicial intervention may be needed.

*United States v. Slone,* 833 F.2d 595, 597 (6th Cir.1987) (emphasis added) (citations omitted). We reaffirm these principles and direct the trial court to consider and apply them if this issue recurs upon retrial.

## IV. MISDEMEANOR JUVENILE ADJUDICATIONS.

During the penalty phase of the trial, the Commonwealth introduced evidence from Appellant's juvenile records that he had been adjudicated guilty of the offenses of trafficking in a controlled substance in the first degree, carrying a concealed weapon, contempt of court, and terroristic threatening. Defense counsel objected and pointed out that only evidence of the trafficking offense was admissible because it was the only offense that would have been a felony if committed by an adult. KRS 532.055(2)(a)(6). Appellant requested a mistrial premised upon the prosecutor's deliberate interjection of this inadmissible evidence. Instead, the trial court admonished the jury to disregard the evidence except for the trafficking offense.

Appellant's claim of entitlement to a mistrial is largely mooted by the fact that we are reversing this case for a retrial on other grounds. However, Appellant also suggests that the Commonwealth's "bad faith" precludes retrial on double jeopardy grounds. We addressed this subject at length in *Commonwealth v. Deloney,* 20 S.W.3d 471 (Ky.2000):

> As a general rule, a mistrial granted on the defendant's motion removes any double jeopardy bar to a retrial. *Stamps v. Commonwealth,* [648 S.W.2d 868 (Ky.1983) ]; *Silverburg v. Commonwealth,* [587 S.W.2d 241 (Ky.1979) ]. In *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), a narrow exception to this rule was recognized "where 'bad-faith conduct by judge or prosecutor,' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Id.* at 611, 96 S.Ct. 1075, 1081 (citations omitted). In *Oregon v. Ken-*

*nedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Court clarified that "bad-faith conduct" means an "intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause," and "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. 2083, 2089. Our case law is of similar import. *Tinsley v. Jackson,* [771 S.W.2d 331, 332 (Ky.1989)] ("party seeking to prevent his retrial upon double jeopardy grounds must show that the conduct giving rise to the order of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court"); *Commonwealth v. Lewis,* [548 S.W.2d 509, 510 (Ky.1977)] ("if there is no bad faith and the choice has not been forced upon the defendant, he is not in a position to cry double jeopardy when the trial is relaunched"). *Id.* at 474.

When Appellant objected to this improper testimony, the prosecutor posited that the misdemeanor adjudications were admissible because they were adjudicated in the same order as the felony adjudication. While the prosecutor was incorrect, we are unable to conclude that he acted in "bad faith."

## V. VICTIM IMPACT EVIDENCE.

Suggs's widow, his adult daughter, and his sister were all present in the courtroom during the penalty phase of the trial. The widow chose not to testify. Over Appellant's objection, the trial court permitted both the daughter and the sister to present emotionally-charged victim impact evidence.

KRS 532.055(2)(a)(7) identifies the type of victim impact evidence admissible at the sentencing phase of a felony trial, *viz:*

(a) Evidence may be offered by the Commonwealth relevant to sentencing including:

. . .

7. The impact of the crime upon *the victim, as defined in KRS 421.500,* including a description of the nature and extent of any physical, psychological, or financial harm suffered by the victim; . . .

(Emphasis added.) The statute says "the victim," not "the victims." KRS 421.500(1) defines who is "the victim":

(1) As used in KRS 421.500 to 421.575, "victim" means an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime classified as stalking, unlawful imprisonment, use of a minor in a sexual performance, unlawful transaction with a minor in the first degree, terroristic threatening, menacing, harassing communications, intimidating a witness, criminal homicide, robbery, rape, assault, sodomy, kidnapping, burglary in the first or second degree, sexual abuse, wanton endangerment, criminal abuse, or incest. If the victim is a minor or legally incapacitated, "victim" means a parent, guardian, custodian or court-appointed special advocate. *If the victim is deceased* and the relation is not the defendant, *the following relations shall be designated as "victim"* for the purpose of exercising those rights contained in KRS 421.500 to 421.575:

(a) The spouse;

(b) An adult child *if paragraph (a) of this subsection does not apply;*

(c) A parent if paragraphs (a) and (b) of this subsection do not apply;

(d) A sibling *if paragraphs (a) through (c) of this subsection do not apply;* and

(e) A grandparent if paragraphs (a) through (d) of this subsection do not apply.

(Emphasis added.) For whatever reason, the General Assembly decided that only one "victim" should be permitted to give victim impact evidence at the sentencing phase of a felony trial—and, in the event the primary victim is deceased, designated who the secondary victim would be. Although this is clearly a matter of trial procedure, Ky. Const. § 116, we have previously declined to declare KRS 532.055 *per se* unconstitutional as a matter of comity, *Commonwealth v. Reneer,* 734 S.W.2d 794, 798 (Ky.1987), and the Commonwealth does not challenge the constitutionality of KRS 532.055(2)(a)(7) in this case. *Compare Manns v. Commonwealth,* 80 S.W.3d 439, 445–46 (Ky.2002) (declaring unconstitutional a portion of KRS 532.055(2)(a)(6) that authorized use of juvenile adjudications for impeachment purposes).

Appellant contends that since the secondary victim, the widow, was present and declined to testify, neither the daughter nor the sister should have been permitted to testify in her place. We disagree. Paragraph (1)(b) of the statute states, "if paragraph (a) of this subsection does not apply;" it does not state, "if there is no spouse." When the widow declined to testify, paragraph (a) did not apply and the adult daughter became the secondary victim who was entitled to present victim impact evidence. If she had declined to testify, the sister would have become the secondary victim. However, it was error to permit *both* the daughter and the sister to testify.[1] Since we are reversing the case on other grounds, we need not decide whether this error so prejudiced Appellant as to otherwise require a new penalty phase.

Accordingly, the judgments of conviction of the Logan Circuit Court and the sentences imposed therefor are reversed and this case is remanded for a new trial in accordance with the content of this opinion.

LAMBERT, C.J.; JOHNSTONE, KELLER, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with GRAVES, J., joining that dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because there was no error or abuse of discretion in the admission of the "Fourth of July" statement or the "candyman" statement.

The admissibility of evidence is within the sound discretion of the trial judge. *Gorman v. Hunt,* 19 S.W.3d 662 (Ky.2000). A ruling regarding the admissibility of evidence should not be disturbed unless the trial judge abused his discretion. *Gorman, supra.* Even if the trial judge admitted the statement for a wrong reason, there is no abuse of discretion here which justifies the appellate relief.

In large measure, this case turns on the doctrine of "present sense impression," which is a well-recognized exception to the general rule regarding the inadmissibility

---

1. *Compare Sherroan v. Commonwealth,* 142 S.W.3d 7, 23–24 (Ky.2004) (KRS 421.520(3) requires the trial judge to consider the victim impact statement submitted by "the victim" designated in KRS 421.500(1), but does not preclude the judge from considering statements submitted by other persons claiming to have been impacted by the crime).

of hearsay within KRE 803(1). Time is an important element in the exception. *Jarvis v. Commonwealth*, 960 S.W.2d 466 (Ky. 1998). A lapse of time is permissible. In this matter there was approximately a 15–minute lag between the alleged event and the statement. In my view, there is an uncertainty as to what the statement actually means. A plausible argument can be made that it is a reference to all the lights and commotion from the police and emergency vehicles at the scene. In any event, such uncertainty supports the proposition that the admission of the statement was harmless. RCr 9.24. The isolated reference to the statement did not affect the substantial rights of the defendant, and thus should not be the basis for reversal. There is no prejudicial error, if any, because three eyewitnesses testified that they saw Terry shoot the victim. Two eyewitnesses testified that he robbed the victim after shooting him. There is very strong direct evidence of guilt and, therefore, any error in the admission of evidence could be considered nonprejudicial.

The record here indicates that Nourse gave the murder weapon to Terry and then disposed of the shell casings. He also washed the blood off of the money. At the time of the trial of Terry, Nourse had several other charges pending against him, and he claimed his fifth amendment right not to testify at this trial. Under all the circumstances, his statement that Terry shot the victim could certainly be against his penal interest and thus covered by KRE 804.

In the final analysis, the trial judge ultimately sustained the objection to the statement and admonished the jury to disregard the testimony. Thus any defect in the testimony had been cured. *See Alexander v. Commonwealth*, 862 S.W.2d 856 (Ky.1993) *overruled on other grounds by Stringer v. Commonwealth*, 956 S.W.2d

883 (Ky.1997). The trial judge properly denied the motion for mistrial as unwarranted.

In this matter the defendant received a fundamentally fair trial and the judgment of conviction should be affirmed in all respects.

GRAVES, J., joins this dissenting opinion.