Thomas BLOXAM and Sue Bloxam, Appellants,

v.

Jeffrey BERG, M.D., Appellee.

No. 2005–CA–002191–MR.

Court of Appeals of Kentucky.

Jan. 26, 2007.

Discretionary Review Denied by Supreme Court Sept. 12, 2007.

G. Kennedy Hall, Jr., Rebecca Grady Jennings, Middleton Reutlinger, Louisville, KY, for appellants.

Gerald R. Toner, O'Byran, Brown & Toner, Louisville, KY, for appellee.

Before COMBS, Chief Judge; ACREE, Judge; KNOPF,[1] Senior Judge.

## OPINION

KNOPF, Senior Judge (Assigned).

The single question in this appeal is whether the trial judge erred in granting a motion in limine to exclude testimony concerning alleged marijuana use by appellee, Dr. Jeffrey Berg. Appellants, Thomas and Sue Bloxam, advance three arguments in support of their contention that the exclusion of this evidence prejudiced their ability to demonstrate that Dr. Berg's treatment of Mr. Bloxam fell below the appropriate standard of care: 1) that the trial judge erred in concluding that the time frame of alleged use set out in the testimony was not relevant to the Bloxams' claim; 2) that the trial judge engaged in an impermissible weighing of the credibility of the proposed witness; and 3) that the trial judge mischaracterized the prohibited testimony as "habit"

evidence. Finding no reversible error in the decision of the trial judge, we affirm.

In early 2002, Mr. Bloxam sought treatment for chronic back pain from the Pain Management Center at Audubon Hospital. Dr. Berg, an anesthesiologist specializing in pain management, performed a successful trans-laminar (rear) lumbar injection on March 1, 2002. Several weeks later, on April 5, 2002, a second trans-laminar injection was attempted without success and Dr. Berg then elected to utilize a trans-foraminal or side approach which requires fluoroscopy guidance. Although Mr. Bloxam was able to walk from the room where the trans-laminar procedure was attempted to the fluoroscopy room down the hall, within minutes of the completion of the side approach injection he began losing feeling and the ability to move from the waist down.

At trial, Dr. Berg testified as to his belief after the procedure that Mr. Bloxam was experiencing a temporary sensory deficit resulting from a prolonged epidural which had been known in some cases to continue for six to eight hours. Because the pain clinic closed at 3:00 p.m., Dr. Berg transferred Mr. Bloxam to the Admission Assessment Unit in the hospital's emergency department. At that time, Dr. Berg was expecting Mr. Bloxam to be able to get up and walk out of the hospital once the anesthetic wore off. However, by approximately 8:00 p.m., it was becoming apparent that the sensory deficit was not of a temporary nature and Dr. Berg was notified that Mr. Bloxam remained in a state of paralysis.

At the time he received the call from the hospital concerning Mr. Bloxam's condition, Dr. Berg had just picked up Michelle Titzer for dinner. Ms. Titzer testified in

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

the deposition which is the subject of this appeal that Dr. Berg immediately returned to the hospital to check on Mr. Bloxam. A careful review of that deposition revealed several other facts which are pertinent to this appeal. First, Ms. Titzer testified that she had become acquainted with Dr. Berg during the course of her employment as a nurse at Audubon Hospital and that they had started seeing each other socially in March 2002. Ms. Titzer also stated that although she frequently saw Dr. Berg at the hospital, the evening of April 5, 2002 (the date of Mr. Bloxam's second injection) "might have been the fourth time" that they had been out on a date.

■ Ms. Titzer's testimony concerning marijuana use by Dr. Berg is at the core of this appeal. The substance of her testimony is best summarized by the following excerpt from her deposition:

Q. I think the first question is in the week prior to April 5, 2002, did you ever observe Dr. Berg use any illegal or controlled substance?

A. The week of?

Q. The week leading up to April 5, 2002?

A. No, I saw him that night, April 5th.

Q. Wait. You saw him April 5th?

A. I mean, I saw him use April 5th, that night.

Q. What did you observe on April 5th?

A. Him smoking pot. He smokes pot every night.

Q. And do you remember what time that was?

. . .

A. He usually—he smokes before he goes to bed.

* * *

Q. And I just want to clear up the questions regarding whether you observed Dr. Berg using an illegal substance on the night of April 5th. And you testified that you saw him smoking pot. But earlier you had testified that you went to bed before he did. **Did you actually see him smoking pot that night or was this just something you assumed he did because it was your impression that he did?**

A. **That might be just because I assumed he did.**

Q. **So you are not certain whether you actually saw him smoking marijuana that evening, that night after you returned from** Audubon Hospital?

A. I'm not certain.

* * *

Q. I just have one or two. Were you with Dr. Berg every night after work the week leading up to April 5, 2002?

A. Maybe a couple of nights. Not every night.

* * *

Q. Were you with Dr. Berg on April 4, 2002, the night before this incident?

A. I don't remember.

Q. But you think you were with him on evenings leading up to April 5th that week?

A. Possibly. I really don't remember.

* * *

Q. And did you observe Dr. Berg use any marijuana during the week leading up to April 5th?

A. I'm not certain that how many times we were together. So I don't know if it was that week.

Q. Would you have any calendars or like a date book from that time period where you marked evening with Jeff?

A. No.

Q. Have you told anyone that you observed Dr. Berg using marijuana on April 5th prior to today?

A. No.

Contrary to the Bloxams' assertion, we can conceive of no purpose for the introduction of Ms. Titzer's testimony other than to present the jury with habit evidence which was clearly impermissible at the time of this trial. Ms. Titzer could not testify to any actual firsthand knowledge of Dr. Berg using an illegal substance during the week prior to the epidural procedure and admitted that her recollection of his use of marijuana on the evening of April 5, 2002 was pure surmise. In fact, she admitted that she could not actually remember if she had even seen Dr. Berg in the week prior to the procedure. Thus, we agree with Judge Montano's assessment that Ms. Titzer merely formed a belief as to Dr. Berg's actions around the time of the procedure based upon her observation of his conduct subsequent to the procedure performed on April 5, 2002. A reading of the entirety of her deposition provides ample support for that conclusion.

At the time this case was tried, courts of this Commonwealth adhered to the long-standing principle that the pivotal inquiry for the fact-finder is not what a defendant was accustomed to do, but what he did at the time in controversy. *Louisville & N.R. Co. v. Taylor's Adm'r.,* 104 S.W. 776 (Ky.1907). As recently as 2003, the Supreme Court of Kentucky concluded that habit evidence was inadmissible as violative of KRE 403, stating that "[c]onfusion of the issues and delay are additional unwanted, but unavoidable, byproducts of habit evidence." *Burchett v. Commonwealth,* 98 S.W.3d 492, 496 (Ky.2003). During the pendency of this appeal, however, the Rules of Evidence were amended in accordance with KRE 1102(a) to add KRE 406 which adopts the view expressed by a majority of Justices in *Burchett* that habit evidence should be admissible to prove conduct in conformity therewith, but only when grounded upon an amendment of the rules. KRE 406, which became effective July 1, 2006, provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

The effective date of the new rule is significant in light of KRE 107(b) which codified the Supreme Court's determination as to the applicability of the rules of evidence:

(b) Effective date. The Kentucky Rules of Evidence shall take effect on the first day of July, 1992. They shall apply to all civil and criminal actions and proceedings originally brought on for trial upon or after that date and to pretrial motions or matters originally presented to the trial court for decision upon or after that date if a determination of such motions or matters requires an application of evidence principles. . . .

Furthermore, as noted in *Terry v. Commonwealth,* 153 S.W.3d 794, 802 (Ky.2005), despite the fact that "KRE 107(b) deals only with the effective date of the adoption of the rules, *i.e.,* July 1, 1992, the same principles apply to the adoption of amendments to the rules." Thus, at the time of trial in this case, habit evidence was not admissible to prove action in conformity therewith.

 Even if KRE 406 habit evidence had been available in this case, we are firmly convinced that it nevertheless should have been excluded under KRE 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Examination of Ms. Titzer's testimony makes clear that its probative value, if any, was substantially outweighed by the "danger of undue prejudice, confusion of the issues, or misleading the jury."

Equivocal testimony like that offered by Ms. Titzer clearly demonstrates the necessity for the exclusionary provisions of KRE 403. Not only was she unable to specifically point to personal knowledge of marijuana use by Dr. Berg leading up to or immediately following Mr. Bloxam's procedure, but she was not even able to remember seeing Dr. Berg the week prior to the procedure. Thus any claim that this testimony represents personal knowledge based upon observation is at best specious. The only possible motive for the introduction of such evidence would be to induce an inference based upon Ms. Titzer's assumption as to Dr. Berg's daily use—an inference based upon little more than supposition.

Because we have concluded that the evidence was properly excluded, we need not address the Bloxams' contentions that the trial judge erred in her conclusion as to the relevance of the time-frame addressed in the testimony or that she engaged in an improper weighing of Ms. Titzer's credibility.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.